Hemphill, Ch. J.
This cause involves important questions. They were fully argued by counsel, and have been considered by the court; but, before announcing the result of our deliberations, an objection fatal to the exercise of tlie revisory jurisdiction has presented itself in the fact that no final judgment was rendered in the court below. The judgment does not show a disposition of the subject-matter of the controversy. It furnishes no evidence of the result of the dispute. There is no sentence pronounced upon the matters contained in the record for one party or the other. There is a verdict for defendants. Upon this should have been entered a corresponding judgment that the plaintiff take nothing by his suit, or that the title of the defendants to the lands be confirmed, or any equivalent order which on the facts as found would afford the relief appropriate to the law of the case. (1 Bail., 7; Dallam, 373.) There is judgment for costs only. The recovery of costs by a defendant is a legal consequence of a judgment upon the matters controverted in his favor. And the judgment for the costs alone is not such final judgment or decree as can be brought up for revision, and the appeal must therefore be dismissed for want of jurisdiction. (9 Mo. R., 354.)
And here this opinion might close were it not deemed expedient to express some conclusions as to the legal effect upon the rights of the defendants of the re-establishment of the headlight certificate under which the plaintiff claims title.
In support of the charge of the court reference is made to various provisions of the laws relative to the detection of fraudulent land certificates and the reestablishment of such certificates as were not recommended to be genuine and legal claims.
The act adopted January 29, 1840, (Acts of 1840, p. 139,) authorized the appointment of commissioners to ascertain and report what certificates had 'been issued to legal claimants; and the Commissioner of the General Land Office was prohibited from issuing a patent upon any survey “which shall not have been or may thereafter be made by virtue of a certificate returned as genuine and legal by the commissioners appointed under this act,” and a patent issued contrary to the provisions of the act is declared to be null and void. By :an act approved February 5, 1840, (Acts of 1840, p. 161,) locations and surveys from and after the first of day May thereafter were prohibited on certifi *226 cates not certified as having been reported to be genuine and legal, and all surveys made contrary to the intent and meaning of the act were declared to be null and void. The Commissioner of the General Land Office was, by an act of the 19th of January, 1841, required to issue patents upon all claims which had been or might thereafter be recommended by the investigating board of commissioners. By the act of Congress of the 4th of February, 1841, (Dallam, 334.) individuals holding unrecommended certificates were authorized to file their petitions in the District Court, setting forth the grounds of their claims, and on a verdict of the jury in their favor, they were entitled to a certificate to that effect; and the Commissioner of the General Land Office was required to issue a patent on said claims in the same manner as if said claims had been recommended as genuine and legal by the board of commissioners appointed under the act to detect fraudulent land certificates. By a supplemental act approved January 14, 1843, it was declared that suits for the establishment of certificates not recommended should be commenced on or before the 1st day of January, 1844, and not thereafter. The courts were not afterwards by any legislative act of the Republic reopened for the establishment of such claims. But by section 2, article XI, of the Constitution, it was provided that they should be opened for that purpose until the 1st day of July, 1847, and all certificates not sned upon or established before the period limited were declared to be barred, and the certificates and locations and surveys thereon to be null and void; and it was further declared that all locations made on such surveys’ should not be disturbed until the certificates were established.
These are believed to be all the provisions which by supposition can materially ailect the questions raised on the charge of the court, and we proceed to examine, but very briefly, the doctrine on which the instruction is predicated.
It will be perceived that patents issued on surveys made by authority of unreeommeuded certificates are declared to bo mill and void; that locations and surveys on certificates were, after the 1st day of May, 1840, prohibited, and the surveys declared to be nullities. The law prohibiting the location of fraudulent land certificates was approved February 5, 1840, and the position cannot be maintained that the prohibition against surveys on unrecognized certificates after the 1st of May, 1840, legalized by implication surveys made previously on a certificate not reported at the time of the survey, or subsequently, to be genuine. The extension of the time to the 1st of May was to prevent a suspension of locations and surveys during the period likely to bo occupied by the investigating board in completing their examinations, but not to elevate surveys made before the 1st of May over those subsequent to that date. Consequently all surveys previously made on a certificate not subsequently recommended would be equally void with those made posterior to the 1st of May. Nor does a survey prior to the passage of the law of the 5th February, 1840, occupy a higher ground than those made subsequently. The commissioner is prohibited from patenting surveys on certificates not recognized as genuine without regard to the date* of the survey, and such patents are declared void, and the ground of the prohibition and nullity, as appears from the law, is that tiro foundation of the survey and patent is radically defective. The authority upon which the survey was made is pronounced to be invalid, and is no evidence of a claim against the Government. A survey, whensoever made, if supported by a recommended certificate, is in contemplation of law valid; if otherwise, it is without legal foundation, and constitutes no such evidence of claim as entitles it to satisfaction out of the public domain.
By the subsequent law of February 4, 1841, suits for the re-establishment of unrecommended certificates were authorized, and patents, on their re-establishment, were directed to issue in the same manner as if they had been recommended by the investigating board of commissioners, and this authorization to sue was afterwards limited to the 1st of January, 1844.
It was not, contended in this case that tills land was open to location at any tune before the 1st of January, 1844. The facts of the case do not require- *227 that the point should be considered. The questions raised ior decision are whether the land should be regarded as vacant after the 1st of January, 1844, and whether the defendant’s rights under their patent can be impaired by the re-establishmeñt of the certificate under the Constitution.
We have already determined that the acts to detect fraudulent land certificates were valid and not repugnant to the Constitution of the Republic of Texas; and this not being an open question, it seems extremely clear that at tlie time of the location, survey, and patent under the certificate of the defendants the land was vacant, or, in other words, subject to location by any claim recognized in law as valid against the Government. A patent on the survey of the same land, made by virtue of the plaintiff’s original certificate, would, by positive declaration of law, have been a nullity on the ground that it was founded on a certificate which, being without the sanction of the commissioners, constituted no evidence of claim against the Government. To prevent the absorption of the public domain by forged and fraudulent certificates, the law had declared in effect that all certificates not reported as genuine should not, either alone or with their locations and surveys, be regarded as claims against the Government. The obligation upon the political'authority to make provisions for recognition of such just claims as had not been reported by the commissioners was acknowledged by the passage of laws opening the courts to claimants but for a limited period. If the plantiff had availed himself of his privilege under the law and had succeeded in proving his claim, he would have been entitled to the land. But as he neglected to institute proceedings, his certificate and the location and survey thereon did not, after the 1st of January, 1844, constitute a claim against tlie Government, and consequently did not operate as a bar to the patent of defendants, and cannot of their own force affect the rights of the latter.
It was not necessary that there should have been a distinct declaration in the law of limitation that if certificates were not sued upon within the fixed period they should be forever barred; that the surveys thereon should be void. With or without this declaration, they were not after that period cognizable by the officers of the Government. They could not be'asserted in a court of justice, and they fell into the mass of unrecommended certificates, and were subject to their legal disabilities.
It is contended by the counsel of the appellees, in an argument distinguished generally for its clearness and logical accuracy, that the rights of the defendants are protected under the 20th section of the general provisions of the Constitution, which declares in effect that the rights of property and of action shall remain precisely in the situation in which 'they were before-the adoption of the Constitution. The extent of the operation of this section is that if the rights were of a character to be beyond the control of legislation before the adoption of the Constitution, they should so continue; if otherwise, they should be subject to the action of the legislative authority in like manner as they had been under the Constitution and laws of the Republic. The provision can have but slight influence on the rights of the parties in this controversy, except so far as they may come in aid of the general principles of law invoked to-support the rights of the defendants.
The point in dispute must be determined by the 2d section of the Xlth article of the Constitution; and did this conflict with the 20th section of the general provisions, tlie former must govern, as it specially regulates the subject-matter, and is equally with tlie other the behest of supreme authority. This authorizes suit to be had to re-establish the certificate, but does not declare that this confirmation shall have relation back to tlie original location, so as to overreach a patent issued previous to the date at which the Constitution went into operation.
Nor is there any principle or rule of law or equity under which this con *228 firmation could have had retroactive operation, so as to clothe the plaintiff with the superior equity to the land. We have already said that the land was open to location at the time of the survey and patent of the defendants. The confirmation of the plaintiff’s certificate shows that he had an existing dormant equity upon the conscience of the political authority; hut he had no right which was recognized in law or which could he enforced in a court of justice at the date of the location, survey, or patent of the defendants. There was no existing bar to the acquisition of the fee hy the defendants or to its relinquishment by the Government; and consequently the title of the defendants cannot be impeached hy the subsequent confirmation of the plaintiff’s inchoate title to the land.
The doctrine by which a junior patent or confirmation (as in this case) is held to have relation bade to the inception of the right and take dignity accordingly, and thus overreach any patent which may have been previously granted for the same land, hut on a junior equity, applies only in cases where the prior equity is valid in law or, in other words, the subject of cognizance by the officers of the Government at the date of the elder patent. This doctrine is explained with such clearness and precision in the case of Les Bois v. Brammell (4 How. U. S. R., 462) that I will transcribe a portion of tiie opinion. The plaintiff (Les Bois) claimed under a concession dated in 1802, but for want of prosecution her claim stood barred in 1829. The land was confirmed to the defendant, Brammell, in 1831, and subsequently, in 1836, the concession of Les Bois was declared to be valid and confirmed. “It is insisted,” says the court., “that the confirmation of 1836 established the original validity of Les Bois’s title; and the confirmation having operated on the concession of 1802, therefore, by relation, it overreaches the confirmation of the town commissioners of 1812 and 1831.
“The doctrine of relation in an action of ejectment, by which the legal title by patent is made to take date from the entry or inception of the title, is familiar in some of the States and has been acted on in this court. It applies where both litigant parties have a grant. The case of Ross v. Borland (1 Pet. R., 655) was of this description. There the younger patent was founded on the best right in equity, standing in advance of either patent, and the equities were tried at law.
“But if the elder or better equity had not been carried into a grant, a court of equity might have administered the same measure of justice, and decreed the land from the patentee, whose legal title was founded on the inferior equity.” “The plaintiff admits her grant, of itself, is insufficient to authorize a recovery, and that she must go behind it; and there she is met by the objection that her claim had no standing in a court of equity or law up to the date of its confirmation, and depended on the political power.”
And it was held that the confirmation did not reach back to the original concession, so as to exclude grants of the same land made in the intermediate time. The rule is applicable to this case. The confirmation cannot restore the original validity of the plaintiff’s claim, so as to impair the right of the defendants, acquired at a time when the claim of the plaintiff formed no bar in law or equity to the location and completion of their title. (Barry v. Gamble, 3 How. R., 55; Choteau v. Eckhart, 2 How. R., 352; Strother v. Lucas, 12 Pet. R., 448; Mills v. Stoddard et al., December Term, 1849, Sup. Ct. H. S.)
"VVe will consider very briefly whether the title of the defendants can be affected by the provision that “ relocations on such survejrs shall not he disturbed until the certificates are established as above directed.”
This is a negative pregnant with an affirmative that such relocations shall be disturbed after confirmation of the original certificate, and, in my judgment, prohibits after such confirmation patents to be issued on any such relocations or resurveys. The exercise of such power over the public domain *229 would not transcend the ordinary limits of legislative authority. The plaintiff, as is shown by the subsequent confirmation of his certificate, had a dormant right to the land, and as long as the fee remained in the Government, it could be rightfully transferred to the claimant, who liad the prior equity, if this could be done by legislative authority, a fortiori, could it be ordained by the convention in the exercise of supreme sovereignty. But these principles have no application to titles such as the defendants’, where the fee in the land had been relinquished by the Government anterior to the passage or at least the operative force of the' constitutional provision.
Note 77. — Hawks v. Thompson, ante, 6.
Note 78. — It was competent for the Legislature to create a tribunal to examine and decide apon the legality of their certificates, and approve them before they should be recognized as valid claims against the Government; and to limit the time within which they must be presented for such approval. (Peck v. Moody, 23 T., 93; Durrett v. Crosby, 28 T., 687.)
Note 79. — Hughes v. Lane, G T., 289.
Note 80. — Howard u ¡Perry, 7 T., 259; Hamilton v. Avery, 20 T., 612.
Note 81. — Jennings v. De Cordova, 20 T., 508.
And the clause in the Constitution, if susceptible of a different interpretation, cannot be construed to divest or annul the perfect rights which by operation of and in conformity with the laws had vested in the defendants. To have annulled perfect rights was beyond doubt within the powers of the convention; but this cannot be assumed to have been their intention unless embodied in express terms or be the result of unavoidable implication.
We have deemed it proper to express these conclusions on the points embraced in this opinion to dispense with the necessity and avoid the expense of a second appeal. There are other points of interest in the record, and collateral questions of importance have suggested themselves in the course of this examination. But on these we forbear the expression of an opinion as not essential to the decision of this controversy.
It is ordered that the appeal be dismissed and the same be certified to the court below.
Appeal dismissed.