## M. D. HART v. E. GIBBONS.

Since the case of Hosner v. DeYoung, (1 Tex. R.) it has been the uniform doctrine of the Court, that the State did not surrender the dominion and control of the public domain, until final and complete title had been issued.

Where the law required the field notes of all surveys to be returned to the Land Office by a certain time, and declared that all surveys, the field notes of which should not be returned by that time, should be null and void and the land open to re-location, and after the time had expired the Legislature in general terms extended the time for the return of field notes, the latter Statute was construed to restore a previous survey and give it validity over a location which was made in the interim, but which had not in the interim been patented.

It seems it would have been otherwise, if the second location had been patented before the extension of the time for the return of surveys.

Comments on the case of Howard and Wife v. Perry, (7 Tex. R. 259.)

Where an opinion is expressed on a question which is not presented by the record, it cannot be regarded as the opinion of the Court.

Appeal from Hunt. The land in controversy in this suit had been located and surveyed under a valid certificate, for Gibbons, the appellee, in 1842, and recorded in the proper office; but the certificate and the field notes of the survey were not returned into the General Land Office on or before the first day of January, 1852, at which time they were required by law to have been returned, or the location and survey become forfeited. After the last named date, the appellant located and surveyed the same land, and on the 25th day of February, A. D. 1852, a patent was issued on his survey, from the General Land Office. The field notes and certificate of Gibbons, the appellee, were returned to the General Land Office on the first of March, 1852. On the 10th of February, 1852, the Legislature extended the time for returning the certificates and field notes of surveys into the General Land Office, until the 31st of August, 1853.

*W. H. Johnson*, for appellant. The time for the return of

field notes was extended from time to time up to the 1st day of January, 1852. Up to that time Gibbons' field notes were not returned, whereby in the language of Article 1991, Hart. Dig. the same became null and void and the lands subject to re-location. In this situation Hart found the land, and on the 31st day of January, 1852, re-located it. On the 10th day of February, 1852, the Legislature passed an Act granting further time for the return of field notes, &c., to the 31st day of August, 1853. There is nothing in this Act, to justify the conclusion that by the simple extension of the time for the return of field notes of surveys previously made, the Legislature intended to annul and make void re-locations made at a time when the survey was by law null and void, and the land by express Statute declared to be subject to re-location. It could only revive the right of the old locator, subject to all intervening equities. In this case, Gibbons had lost his right to the land by his own laches. He knew the consequences of his neglect and made his election. His failure to return his field notes was evidence of an intention to abandon the location. The analogy between this case and the case of Lewis v. Mixon, decided in 11 Tex. R., is wanting in one essential particular. In that case the prior location was disturbed, after the establishment of the original certificate, by express authority of the constitutional provision re-opening the Courts for the establishment of that class of certificates.

*Morrill & Dickson*, for appellee. By virtue of the Act of 10th February, 1852, the appellee was placed precisely in the same situation that he would have been, if the Act had been passed in December, 1851, which Act, with the other Acts *in pari materia*, authorized the appellee until the 31st August, 1853, to deposit his field notes in the General Land Office, for the purpose of procuring a patent, and also to institute a suit of trespass to try title. When, therefore, the appellant, as the case shows, obtained his legal title on the 25th February, 1852, he did this with a full knowledge that the appellee had a bet-

ter and greater equitable title than himself, provided he should deposit his field notes in the Land Office previous to the 31st August, 1853; and he obtained his title at the risk of the same being defeated by the appellee doing what he could by law do, and did.

It may be further remarked that when the appellant made his survey, the records of the County Surveyor acquainted him with the fact that the plaintiff had an equitable title to this land, which was then indeed lying dormant, but liable to be awakened into life by legislative action. The views herein taken are believed to be in accordance with the principles laid down in Warren v. Shuman, 5 Tex. R. 441; Howard v. Perry, 7 Tex. R. 259; Lewis v. Mixon, 11 Tex. R. 564.

LIPSCOMB, J. The question presented is on the validity of the patent issued after the time required by law for the return of the certificate and field notes of the survey made for Gibbons had been extended. The question cannot be regarded as open in this Court at this time, as, since the case of Hosner v. DeYoung, (1 Tex. R.) it has been the uniform doctrine of the Court, that the State did not surrender the dominion and control of the public domain, until final and complete title had been issued. It was therefore competent for the State to extend the time to the appellee Gibbons, for making a return of his certificate and field notes. And when the time was so extended, it by relation restored to him his right of possession, from the older location and survey, over the location and survey made by the appellant, in the interval between the time when the older location and survey should have been returned into the General Land Office, and the passage of the relief law extending the time. No incipient or incomplete title, acquired during that interval, could present any legal bar to a restoration of the rights of the first locator. If the patent had issued to the appellant before the passage of the relief law, the patent would have given him a valid title, not to be affected or impaired by the Act of the Legislature. This doctrine was well

discussed by this Court in the case of Wanen v. Shuman, (5. Tex. R. 441,) and again in Lewis v. Mixon, (11 Tex. R. 564.), The pretension that an incipient title to a part of the public domain creates such a vested right as to place it beyond the control of legislation, cannot be sustained as a conclusion, either from the legislation or from any judicial decision.

It has been contended that the authority given by Statute (Hart. Dig. Art. 3230) to sue for land on which the plaintiff had located a valid certificate, is a recognition of the fact that the fee, by such location, had passed from the State. This is not a fair inference. It amounts to nothing more than this, that the person holding the incipient title shall recover and hold against all who cannot show a better title, but does not conclude the State. It is competent for the State to say what degree of title, less than the fee, shall be sufficient to sustain an action for the protection of the rights of the party, whatever they may be, against those who have not an equal or superior right. This the State may well authorize, without a relinquishment of the fee in the land sued for.

The case of Howard and wife v. Perry, (7 Tex. R. 259,) has been supposed to afford some sanction to these incipient titles being vested rights. The Opinion of the Court in that case will not sustain any such conclusion. The Opinion discusses an Act of the Congress of the Republic, validating a certain claim, which Act contains the condition following, i. e. : "Pro- "vided, however, that this Act shall not be so construed as to "impair or affect the right of any person or persons claiming "the land adversely to the said Hibbins or his heirs." And we held that a location and survey of a valid certificate, before the passage of the Act, was a claim within the condition or proviso in the Act. But we did not rule that the right was a vested one, that could not have been impaired by an Act of the Legislature. That question was not presented by the record, and any expression of an opinion to that effect was an *obiter*, and could not be regarded as the opinion of the Court. If the Act of the Legislature of the 10th February, 1852, had con-

tained a proviso such as the one in the Act for the relief of Hibbins' heirs, there can be no question but the appellant's right would have been in like manner sustained. Nothing has been better or more firmly settled, than the doctrine we have discussed; and we can see no good reason why it should be modified or disturbed.

Judgment affirmed.