### E. M. SMITH AND OTHERS V. M. A. TAYLOR.

1. The power of courts to appoint guardians *ad litem* for infant defendants is discretionary, and, under ordinary circumstances, the exercise of that discretion by a district court will not be revised in this court.

2. The acts of a guardian *ad litem*, when not impeached for fraud, collusion, or gross misconduct, are binding on the infant parties for whom they are performed.

3. In a suit to cancel a conveyance of land to the defendants, and to quiet plaintiff's title to it, the district court appointed a guardian *ad litem* for such of the defendants as were minors. The plaintiff recovered judgment for the land and for damages; whereupon an agreement of the counsel representing the plaintiff and the defendants was entered of record in the district court, by which the plaintiff remitted the damages, and in consideration thereof the defendants waived all defects, if any, in the service of the process, and agreed to bring the cause, by writ of error, to the Supreme Court "on the merits of the respective titles of said parties, plaintiff and defendant." *Held*, that this agreement is supported by a valuable consideration, and is binding upon all the parties, so far as their rights are involved in this suit. *Held further*, that by this agreement all exceptions to the service of process were waived, and all the parties must be regarded as properly before the Supreme Court, for the purpose of contesting the merits of their respective titles to the land in controversy. And such an agreement would, it seems, even in trespass to try title, confine the contest to such titles as were claimed by the parties litigant; and would exclude mere outstanding titles from consideration.

4. It is assigned as error that the court below admitted a deed to be read as evidence, when it had not been filed and notice given, as required by the statute. But no b ll of exceptions was taken in the court below to the admission of the deed. *Held*, that in this court the necessary filing and notice will be presumed to have been duly given, or else to have been waived. And an objection of this character is waived by the agreement of the parties to bring the cause to this court, for trial upon its merits.

5. A good cause of action is disclosed by a petition which alleges that the plaintiff is the owner of certain land; that the defendants, in fraud of plaintiff's rights, claim the land under a certain third person; and that such claim of the defendants is a cloud upon plaintiff's title, to his damage.

6. In an action to quiet title, it is not necessary for the plaintiff to describe with particularity the adverse claim set up by the defendant.

7. The provision in the Constitution of the Republic of Texas, that "no person's property shall be taken for public use without just compensation," manifestly intended to reserve to the sovereign power the right to appropriate private property for public use, whenever it might become necessary; but it also guaranteed just compensation to the citizen.

8. In condemning and appropriating private property for public use, it is not indispensable that the compensation to the owner should be made *instanter*. If due provision be made for its future payment, that is sufficient to vest the title in the government.

9. The proceeding provided for by the act of the Congress of the Republic, of the year 1839, to locate the seat of government, was a proceeding *in rem*, technically so called. From the decree of the special tribunal created by that act there was no appeal, and it must be held valid and binding, against all the world. Such decree was competent evidence against one who was not a party thereto, and who did not claim in privity with the parties.

10. It has been repeatedly decided by this court that, until a formal patent has issued, the government has the right to appropriate land, nothwithstanding a location has been made upon it.

11. By the condemnation and appropriation effected under the act of 1839, above referred to, of the land now comprised within the city of Austin, the land was separated from the public domain; and a patent subsequently issued, though upon a location made prior to the condemnation, was issued without authority of law, and vested no rights against purchasers of the city lots from the State.

12. The Legislature, not the courts, is the source to which the locator, or his assigns, must apply for relief upon the facts above indicated.

Error from Williamson. Tried below before the Hon. E. H. Vontress.

This case involved the validity of the titles to the Austin city lots sold by the State under the condemnation of the site of the city. For all practical purposes the main facts of the case are sufficiently indicated in the opinion of the court.

*F. W. Chandler*, for the plaintiffs in error.—The plaintiff, in his petition, alleges that he was the owner of out lot No. 54 in division E. in the city of Austin ; that he deraigned his title by patent from the State to him and one J. C. Tannehill, dated thirty-first day of October, 1854, and by a deed from Tannehill to plaintiff, and charges that the defendants pretended to have some sort of a title or claim adverse to his, which they derived through or from one William R. Goucher, or some other person to him unknown, and charges that the said W. R. Goucher never had any right or title to it ; that the land, long before the defendants acquired their pretended title, was condemned and set apart for public use by the government of the late Republic of Texas, all of which was well known to defendants at and before any pretended right had been acquired by them.

That the defendants set up title in fraud of his rights, and to make their claim a speculation, and oppression to him and others, by forcing him and others to compromises to avoid litigation ; that the defendants' pretended claim constituted a cloud upon his title, and greatly depreciated the value of his lot ; that by reason of the fraudulent actings of the defendants, he was damaged $10,000, and prayed for service, and for judgment establishing his title, and for costs and damages.

The venue was changed eighteenth of August, 1858. None of the defendants answered in the case. On the twenty-fourth of September, 1858, the plaintiff filed an amended petition by striking out the name of William R. Goucher, and inserting the name of Samuel Goucher ; and alleged that by reason of the claim set up by defendants as aforesaid, he was damaged $10,000 in the value of the lot, by being unable to sell the lot of ground for its value. If it was not for the defendants' claim, the lot would then have been reasonably worth $12,000. Immediately upon filing the amended petition, the court appointed a guardian *ad litem* to represent the

XXXIV—37

minor heirs of L. W. Young, and the parties went to trial instanter.

The first error assigned to the ruling and judgment of the court was upon the demurrer. We think the demurrer should have been sustained, so far as the minors were concerned, since the suit was brought to remove an alleged cloud upon the plaintiff's title, and for damages; but the plaintiff did not allege that either the ancestors of the said minors, their next friend, or guardians, had ever been in possession of the land; or that their ancestors, next friend, guardian or Goucher ever claimed the lands in question; or that they had any paper title on record or elsewhere, under which they claimed it. We are at a loss to see how it was possible for these minors to have beclouded or slandered the plaintiff's title, when it is not alleged that they, their ancestors, next friend, or guardian, had ever had adverse possession of the lands, or were asserting ownership under even a colorable title.

We admit the well settled doctrine, that has been decided by this court, that a party has the right to bring suit to remove a cloud from his title to land; but we take it, in such a suit, the plaintiff must disclose the title he seeks to annul, or allege that the defendants are in possession, or that they have some evidences of title in writing; and also show to the court that the defendants are capable in law of slandering or beclouding plaintiff's title to the land. We do not think, nor has the plaintiff attempted to show, that infants and minor children are capable in law of such offenses against his rights and title to the land.

And we insist that the plaintiff's petition does not disclose any cause of action even against adults, for the reasons already assigned; for there is no express malice alleged in the petition against any of the defendants in claiming the lot. It is true that he alleges that the defendants knew the land had been condemned for the use of the government, before they acquired their title, and that they set up their title in fraud of his rights, and to make their claim a

speculation and oppression to him and others; but he fails to allege any trespass on the part of any one of the defendants, and that is not enough to entitle the plaintiff to recover damages. If it is, then no man is safe in claiming a tract of land that he may have honestly purchased and paid for. If it should turn out that some one else had a better legal title, he could bring his suit against such purchaser in good faith, for slandering his title, and recover damages. (See 1 Burrow's Reports, 2422; 3 Taunton Common Law Reports; Smith v. Spooner, 246, in Supreme Court Library; 5 Barbour, New York, 297; Bailey v. Dean, 2 Greenleaf on Evidence, 428, and authorities cited in each case; 1 Saunders R., 131.) And we refer to the same authorities to show that the petition discloses no cause of action against the defendants, E. M. Smith, S. W. Sims and Mary L. Young, and the verdict and judgment should have been in favor of all the defendants.

The second error is assigned to settle a question of practice that is of vital importance to minors in this State. The law wisely provides for the appointment of a guardian *ad litem* in all suits in the district courts where the minors have no legal guardian. (See Oldham & White's Digest, 141, article 562.) It is regarded as the settled law of this State that the ward is bound by any judgment or decree of its courts when represented by a guardian *ad litem* (see Cannon v. Hemphill, 7 Texas, 184); that where the district judge finds it his duty to appoint a guardian *ad litem*, he is as much bound to appoint an attorney of capacity to see that he discharges his duty with fidelity to his wards, and to see that he takes time to investigate the rights of his wards, as it is to make the appointment. Here was a case brought from a distant county by change of venue, involving, if the allegations in the petition are true, and the court was bound to so regard them before the trial, $12,000 worth of real estate, without showing what interest the minors had or by what mesne conveyances they set up their claim. The guardian was appointed and went into the trial

instanter, as the record shows, without a single title paper, and without asking or taking time to examine and see what rights his wards had. If their title to the property was sufficient to depreciate it in value, surely the guardian should have looked into it and ascertained something about its validity. In this case it is clear that he did not, and the court that appointed him must have known it. While we all admit it to be a discretionary power vested in the court, we respectfully insist that the record exhibits such a flagrant abuse of that discretion, that for the protection of the minors in this suit, and to correct the abuse of a discretionary power that has become so common in our courts, the cause should be reversed.

We submit the errors contained in the bill of exceptions signed by the court for the guardian *ad litem.* Neither the patent to plaintiff and Tannehill, or the deed from Tannehill to plaintiff, or the transcript from Bastrop county, could be evidence against the minors, for there is nothing in it to show title in them or their ancestors. Neither was the copy of the bill of E. M. Smith v. S. W. Sims *et als.,* any evidence against the minors, for the record does not even show that they, the minors, or their ancestors, ever claimed any right to any part of the Samuel Goucher tract. It was at most the allegations of E. M. Smith that they claimed it—the bill does not prove it—Smith did not swear to it, and surely the testimony of S. G. Norvell, Fisk and Claiborne, should not have been permitted to affect the rights of these orphan children. They could not claim the plaintiff's title. Neither was there any evidence before the jury that any of the minors ever did set up any claim to the lot or any part of the Goucher tract; and the bill of Smith was no evidence that any one but him ever did claim the lot of land, hence the bill could not have been evidence against any one but him. Yet the court instructed the jury that it was evidence against all the defendants.

It may be said by defendant in error that there is no judgment

against the minors for costs; and if the evidence introduced by him in the court below does not prove title or claim of title by the minors, then there is no proof that they have any, and they are not injured by the judgment.

But we say the plaintiff alleges that they had a claim sufficient to cast a cloud upon his better title, and he is bound by that allegation. If this is so, then we say the minors have not had a fair trial; that the verdict and judgment rendered against them, without any legal evidence to support it, estops them from litigating their right to twelve thousand dollars worth of real estate, until the same is reversed.

The fifth assignment of error has been virtually disposed of already.

The second charge given by the court to the jury, at the request of the plaintiff, was manifestly wrong, for it assumes the fact that the fee to the land was in the government when condemned for government purposes, when there is no legal evidence in the record of that fact; and we presume this court judicially knows that T. J. Chambers holds an older grant to the same land, valid upon its face, yet the heirs of Goucher, or any one else, may avoid that title by proving a proper state of facts for that purpose; and the charge was wrong, because it in effect required the jury to find against the most positive testimony in the record, for the plaintiff charges the defendants with claiming title under Goucher, and the law of twenty-third of March, 1839, appointing commissioners to locate the seat of government, required them to give to the owners of the land five days notice of the time and place of condemnation. (See Acts of 1839, 36, § 4.)

And the plaintiff introduced the whole record, which shows that Goucher had no such notice. Neither could the patent from the government pass any title, if the land rightfully belonged to Chambers, for he had no notice, as the law required, to give to the court and jury condemning the land jurisdiction.

The third charge given by the court, at the request of the plaintiff, is erroneous for the same reasons.

The fourth charge does not apply to the minors, and we will not discuss it for the defendants, as the plaintiff has remitted the damages.

That the court should have sustained the motion for a new trial, filed by A. H. Chalmers and F. W. Chandler, for the reasons already given, is too clear to admit of argument.

The plaintiff's own evidence disclosed the fact that not near all the parties at interest were before the court. The copy of the bill of E. M. Smith v. S. W. Sims *et als.*, shows that John Spaulding, George Spaulding, James L. Spaulding, William B. Spaulding, Sarah S. Spaulding and Mary Jane Timoney, six in number, and all minors, were not made parties. When these facts were proved to the court, we respectfully insist that it was the duty of the court to exercise its chancery powers, and order the jury to find for the defendants, or give the plaintiff leave to withdraw his case from the jury, and make the proper parties to the suit, which would have avoided that which the law most abhors—a multiplicity of suits—and especially when the rights of minors are involved, and they are left liable to be drawn into other suits.

We come now to the errors assigned by E. M. Smith, S. W. Sims and Mary L. Young.

It was error for the court to allow the plaintiff to read in evidence the deed from Tannehill to him, because it had not been filed three days before the trial among the papers in the case, and defendants notified thereof, nor was the execution of said deed proved before giving it in evidence. (See Oldham & White's Digest, article 469.)

The fact that the defendants were not in court to object to it, is not a sufficient reason why the plaintiff should not comply with the letter of the law; on the contrary, in the absence of de-

fendants, it was the duty of the court to have seen that the plaintiff's evidence was submitted to the jury in compliance with the strict letter of the law.

*Ex parte* proceedings, involving title to real estate of the value of twelve thousand dollars, should ever be regarded by the court with an eye of distrust, particularly where the interests of minors are directly involved.

The court erred and misled the jury in his general charge, by telling them that they might look to the copy of the bill of Smith v. Sims *et als.*, in the Federal court, to prove that the defendants claimed title to the lands in controversy. That bill could not be legal evidence of anything in this suit.

The plaintiff in this suit was no party to that bill, neither was his vendor, Tannehill, a party to it, hence it was the duty of the court to instruct the jury that the copy of that bill was not evidence of anything against these defendants, and particularly against Mary L. Young and S. W. Sims. (See Gresley's Eq. Ev., 322; 2 Espi. N. P., 448, and 2 A. K. Marshall's Ky. R., 828.)

Neither is there any evidence in the record that these defendants claimed the lands in controversy against the plaintiff.

This is a joint and several judgment against all these defendants for the lands and the costs of the suit, the damages having been remitted by the plaintiff.

Neither one nor all of the three willing witnesses, Fisk, Claiborne and Norvell, pretended to know, or even surmised from facts they might have known, that Mary L. Young had ever claimed one foot of the Goucher tract of land, hence the verdict and judgment as against her were rendered without any evidence.

If the verdict and judgment are bad as to one of the defendants, they are bad as to all. (See Burleson v. Henderson, 4 Texas, 49.)

That the verdict of the jury was contrary to the law and the evidence in the case, is too clear to debate, and too patent to this court to require authorities to establish.

There is no legal proof in the record to establish any one of the material allegations contained in the original petition.

As for the amended petition filed on the day of trial as against the defendants in the court below, it was fully settled in the case of Morrison v. Walker, 22 Texas, 18, and Weatherford v. Van Alstyne.

The judgment should have been for the defendants, for all the reasons assigned in favor of the minors, who are defendants in this suit.

*Hancock & West*, for the defendant in error.—Perhaps the easiest mode of presenting our views, would be to discuss the charges of the court, especially those asked by the plaintiff below, as they bring up in a compact form the real issues in the cause.

The first instruction brings in question the regularity and legality of the proceedings in relation to the condemnation of the seat of government.

The act on which these proceedings were based was passed on the fourteenth day of January, A. D. 1839, and can be found in Laws of First Congress, 161.

From a persual of the proceedings, it will be seen that the formalities of the act were literally complied with, and the owners of the land (whoever they were) were solemnly cited in accordance; and there is no question made, nor can there be any made, but that the proceedings were regular and formal.

It is objected, however, that there was no notice given to the heirs of Goucher. The power of taking private property for public use, after due compensation to the owner, was vested by the Constitution of the Republic of Texas, in Congress. (Constitution of the Republic, thirteenth clause, Dec. of Rights. See on this clause Smith's Com., § 313.)

Under the act above cited, a special tribunal was enacted by Congress, for the purpose of, first, ascertaining who were the owners of the land; second, to determine the amount of compensation due them.

The third of a league of land, in question, in the discharge of their duties, had to be passed upon, both as to its title (at that time) and as to its value; and by reference to the bill of Smith it will be seen that this third of a league of land was ascertained by that tribunal to be the property of Edward Burleson and J. Porter Brown, and to be of the value of three dollars per acre.

By what chain of transfer Burleson and Brown held it, the records of that court do not inform us. It may have been a written transfer that was never recorded ; it may have been a merely equitable title; or it might have been, and in all probability was, a mere parol sale by Goucher to Burleson and Brown, a mode of sale so common at that day, and the legality and regularity of which has been frequently decided by our court. (Briscoe v. Bronaugh, 1 Texas, 326.) For it will be observed that these transactions took place before the passage of our statute of frauds: We hold that whatever may have been the character of the original title of Goucher or his heirs, or by what mode that title was judicially ascertained to be vested in Burleson and Brown, that that fact being so ascertained by that special tribunal, its decision cannot now be revised; that it was a court of last resort between the sovereign and the citizens; that its judgment was a judgment *in rem*, of which all the world has notice, and by which all the world is bound, and that no power can now disturb. Least of all can this judgment be set aside to the injury of the defendant in error, Taylor, who holds as an innocent purchaser under that judgment, from the sovereign of the soil, and to whose title the principle of the decision of Guilbeau v. Mays, 15 Texas, 410, well applies. Taylor was not bound to look beyond the sheriff's deed to the State. We conclude, then, that the court charged the law

when he charged that under these judicial proceedings and the patent, the fee passed to Taylor.

The want of power to revise the proceedings of this tribunal is well established by the following authorities, in cases decided by our own court: Baker v. Chisholm, 3 Texas, 157, and authorities there cited; Cullem v. Latimer, 4 Texas, 329; Field v. Anderson, 1 Texas, 439; Cannon v. Hendrick, 5 Texas, 339; Arberry v. Beavers, 6 Texas, 457; O'Docherty v. Archer, 9 Texas, 295. And in Supreme Court of the United States, Elliot v. Peerion, 1 Pet. R., 328, 341; Arredondo case, 6 Pet. R., 729, *et seq.* If, then, the heirs of Goucher, or these speculators who claim to have purchased the heirs out, have any claim for relief, it is not such a claim as they can assert in a court, and they must look to the legislative and not to the judicial department of the government.

Such an appeal has already been made, and, as will be seen by reference to the act cited below, has been responded to properly by the Legislature. (General Laws of 7 Legislature, ch. 28, p. 22, passed December 18, 1857. " An act to quiet land titles in the city of Austin," is the title.)

The second instruction asked by the plaintiff below, and given by the court, is to the effect that the fee still remaining in the sovereign at the time of condemnation, it was in the power of that sovereign to cast it in whatever direction and in whatever mode it might see fit.

By reference to the patent to Goucher, it will be seen that it issued on the sixth day of May, A. D. 1841, several years after the land had been, by solemn legislative act and subsequent judicial proceedings, withdrawn from the mass of the public domain, and dedicated solemnly to a great public purpose. Can it be doubted that the sovereign still holding the fee had the right to withdraw it, *mero motu*, from the public domain, and pass the fee in a different mode and in a different direction?

This power, so important and necessary to be vested in the sover-

ign, and so inseparable from the right of eminent domain, and inherent in sovereignty itself (though to be exercised with great caution), has been recognized in the most solemn manner by our court, in a long chain of decisions and well sustained by principle. The following are the cases sustaining the doctrine : Kemper v. Corporation of Victoria, 3 Texas, 135 ; Hosner v. De Young, 1 Texas, 764 ; Hart v. Gibbons, 14 Texas, 213 ; Warren v. Shuman, 5 Texas, 441; Lewis v. Mixon, 11 Texas, 564. Elsewhere as follows: Field v. People, 2 Scammon, 81 ; Cochran v. Van Surly, 20 Wend., 365 ; Butler v. Palmer, 1 Hill, 324 ; 2 Serg. & Watts, 285. The cases of Howard v. Perry, 7 Texas, 259, and Hamilton v. Avery, 20 Texas, 612, appear to squint rather than look boldly in the other direction ; nor are we sure that the case of Hamilton v. Avery, 20 Texas, 612, was at all intended by the court to overrule all the former decisions that had become, as it were, the fixed law of the land, and a rule of property and valuable right acquired under these decisions. The case of Howard v. Perry, 7 Texas, 259, seems to conflict with Hart v. Gibbons, 14 Texas, 213. We have not space for more elaborate argument, but feel satisfied that all these cases, when carefully examined with reference to the peculiar features of each case, can all be made to harmonize, and will all of them sustain the position above taken.

The third instruction is to the effect, that the patent to Goucher's heirs, issued on sixth of May, 1841, after the act of condemnation, and after its reservation and dedication for public purposes, was issued in violation of the law.

This is clear. The fee to the land in question, after its reservation by the State, could only be passed in the mode provided by the act reserving it.

This patent, then, issued in violation of law, and under the following authorities, all familiar to the court, would necessarily be void: State v. Delesdenier, 7 Texas, 76 ; Polk's Lessee v.Wendell, 9 Cranch, 99 ; Clarke v. Graham, 10 Wheat., 577 ; 2 How., 318 ; 7 Peters, 226 ; 1 Texas, 721.

In support of the fifth charge asked by plaintiff below and re-fused, we refer to the following authorities, and a careful perusal of them will satisfy the court that if the condemnation be regular, that neither notice or compensation at the time of condemnation is essential, provided ample compensation be afterwards made or tendered; and such we believe to be the effect of the act of the Legislature, passed eighteenth of December, 1857, and found in acts of Seventh Legislature, General Laws, 22, ch. 28; Rogers v. Bradshaw, 20 Johns,, 735 ; Jerome v. Ross, 7 Johns. Ch., 344, per Chancellor Kent.    *Vide*, also, Smith's Commentaries, §§ 311 to 326, where the subject is fully discussed.

We believe, then, that there cannot be a question, as to the real merits of these titles, and that the court will hold that they were fairly before the court below, and wisely disposed of by that court.

OGDEN, J.—The defendant in error instituted suit in the dis-trict court for Travis county, in 1858, against the plaintiffs in error, to cancel a deed of defendants below, and to quiet his title to a certain lot of land in the city of Austin.    Subsequently the cause was removed, by change of venue to Williamson county, where, in September, 1858, judgment was rendered for the plain-tiff below, for the land, and for one thousand dollars damages. In November of the same year the plaintiff and defendants entered into an agreement, by which the plaintiff remitted the damages as to all the defendants, and, in consideration of which, the defendants waived all defects in the service of the original pro-cess on either or any of them, and agreed to bring said suit, by writ of error, to this court, on the merits of the respective titles of said parties, plaintiff and defendants.    This agreement seems to have been made for a valuable consideration, and was made a mat-ter of record in the cause.    We are, therefore, of the opinion that it must be regarded as binding on both parties, so far as their rights in this suit are concerned, and to the extent of the agree-ment.

On the trial of the cause the court appointed a guardian *ad litem* to represent the minor defendants. The power of the court to appoint a guardian *ad litem* for parties to a suit who are minors, and who are unrepresented, is not questioned. This is a discretionary power, vested in the courts from the necessity of the case, and that discretion must rest in the sound judgment of the court; and, under ordinary circumstances, the exercise of that discretion is not the subject of revision. Fraud, or collusion, or gross misconduct, of the guardian *ad litem*, might be a sufficient cause for setting aside any judgment or decree entered up against minors; but it is believed that where a court has performed that duty, and the guardian so appointed has accepted the trust, his acts are good, and binding upon the minors for whom he acts, and especially if those acts are not impeached for fraud, and more especially if they are first brought in question in this court.

The exceptions to the service in the lower court were expressly waived by the agreement, and we must now regard the parties properly before this court, for the purpose of contesting the merits of their respective titles to the land in question; and it may be remarked that the original object of this suit was to test the titles of the parties, and not to inquire into the fact of an outstanding title in some one else. But if this suit had originally been brought in the nature of trespass to try title, against the defendants in possession, then the agreement would shut out all investigation of any title not in the immediate parties.

The plaintiffs in error claim that the court erred in permitting the plaintiff below to read to the jury the deed from Tannchill to plaintiff, the same not having been filed among the papers of the cause, and notice given to the opposite party according to law. This objection might have been good, had it been taken below, and an exception to the rulings of the court been taken at the time; but as no exception was taken, this court will presume that the necessary notice was given, or that the notice was waived.

(Fulton v. Bayne, 18 Texas, 56.) Besides, the agreement by plaintiffs in error to bring the cause to this court to be tried on its merits would imply a waiver of that objection.

We think the demurrer to the plaintiff's petition was properly overruled. The petition alleged the fact that defendants were claiming title from Goucher, in fraud of his rights, and that the claim was a cloud upon his title and a damage to his rights in the land. This we deem a sufficient cause of action under the repeated decisions of this court. Nor do we think the plaintiff, in bringing a suit of this character, would be compelled to set out and describe the defendants' claim, or title, with the same particularity as he would his own, as in many cases it would be impossible to know the particular character of the claim with which he is threatened; and it may also be urged that the agreement has cured the defect, if any, in this particular. We do not consider this an action for *slander of title*, technically so called, when malice must be alleged and proved; but more particularly an action to clear or quiet title; and if, as is claimed for the defendants below, or rather for a portion of them, that they were incapable of slandering plaintiff's title, then their guardian *ad litem* had only to file for them a disclaimer, and they would have been dismissed from the suit. But we think the parties are now before the court, asking for an adjudication of the merits of their respective titles.

In 1839, the Congress of the Republic of Texas passed an act for the permanent location of the seat of government, which act appointed a commission to select a site for the capital, and provided for the appropriation of a certain quantity of land for that purpose; and also provided, in case the land selected for the seat of government should belong to individuals, that a special tribunal should be assembled at the county seat of the county in which the land might be situated, for the purpose of formally condemning the same for the use and benefit of the government. The commissioners made a selection of about one and a half leagues of

land, the present site of the city of Austin. The special court for the condemnation of the land was convened at Bastrop, the then county seat of the county in which the land was situated. All the formalities of the law of Congress were strictly observed, the land was formally condemned for the use of government, and a deed for the same was duly executed by the sheriff of Bastrop county to the Republic of Texas, in strict compliance with the law.

In 1854, the defendant in error and J. C. Tannehill purchased from the State of Texas the land in question, and received a patent for the same; and Tannehill subsequently conveyed his interest to the defendant in error. This is the title of defendant in error, and upon which he obtained a judgment against the plaintiffs in error, who claim the same land by virtue of a patent from the State of Texas to the heirs of Samuel Goucher, dated in 1841. This patent issued upon a location and survey of one-third of a league of land, which was made in 1838, by virtue of a headright certificate issued to Samuel Goucher. The certificate of Goucher was located before the condemnation of the land for the government. The location and patent appear to be regular, and, so far as can be known from the imperfect evidence in the transcript, are in conformity with the law; but the evidence (if it can be called evidence) is of such a character that no court would be justified in passing upon its genuineness, or consider it sufficient to establish any rights for the plaintiffs in error. And, indeed, it was introduced in the court below by the plaintiff, not for the purpose of establishing any rights, or as the evidence of any rights in the defendants, but simply to prove that defendants were attempting to assert a title to the land claimed by him. This character of evidence might possibly be sufficient for the purpose for which it was made, but for no other.

The plaintiff below proved up his title from the State beyond a doubt, and the only question that could possibly arise to prevent his from being a perfect and indefeasible title, presents itself in the

act of condemnation by the Republic of Texas, of the land now occupied as the seat of government. The Constitution of the Republic of Texas provided that "no person's property shall be taken for public use without just compensation." This clause manifestly intended to reserve to the sovereign power the right to appropriate private property for public use, whenever it might become necessary; but guaranteed to the citizen just compensation. This right of governments is maintained by all writers on political sovereign power, and is the general language of the courts. (Smith's Commentaries, § 311; Starkie on Evidence, 378; Cochran v. Van Surlay, 20 Wend., 365; Kemper v. Corporation of Victoria, 3 Texas, 137; Hosner v. De Young, 1 Texas, 764; Hart v. Gibbons, 14 Texas, 213.)

There are many authorities maintaining the doctrine that compensation is not necessary in order to vest in the sovereign a complete title to all property condemned for public use, provided that due provision is made for future payment. (Rogers v. Bradshaw, 20 Johnson's R., 743; Smith's Commentaries, 326.) The land in question was regularly condemned for the use and benefit of the government in 1839; was then taken possession of and appropriated for the seat of the general government; liberal provision was made for the compensation of the individual owners; and we are now unable to find any power or authority to revoke or annul that appropriation.

A question is raised as to the legality, or rather the formality, of the condemnation, under the law passed for that purpose. A special tribunal was created; the owners of the land, so far as known, were duly cited; the titles were investigated, and the value ascertained, and, under the decree of this tribunal, the deed was executed to the government. This was a proceeding *in rem*, technically so called, had by a special tribunal, from whose decree there was no appeal. This judgment or decree must be held as good and binding, as against the world, "and may be evidence

against one who was not a party thereto, and who does not claim in privity with the party." (Starkie's Ev., 340.) The tribunal, constituted for the purpose, adjudged the land claimed by the Goucher ·heirs· to be the property of Edward Burleson. We are not informed upon what evidence this judgment was founded, nor by what kind of transfer the title passed from Goucher to Burleson; nor do we consider it material now to know, since the title has passed to the government, and from the government to third parties and innocent purchasers. It will be observed that no title was issued to the Goucher heirs, until about two years after the condemnation and appropriation by the government, and this court has repeatedly decided that, until a formal patent has issued, the government has the right to appropriate the land, notwithstanding a location may have been made. (Kemper v. Corporation of Victoria, 3 Texas, 135; Hart v. Gibbons, 14 Texas, 213; Hosner v. De Young, 1 ·Texas, 764; Warner v. Shuman, 5 Texas, 441; Lewis v. Wilcox, 11 Texas, 564.) Under these authorities we feel warranted in deciding that the government had the power and right to condemn and appropriate the land when, and in the manner she did, and that the law passed for that purpose was fully complied with; and that, therefore, from the act of condemnation and appropriation, the land was separated from the public domain, and could not be appropriated by individuals. It follows that the patent issued to the heirs of Goucher in 1841, was issued without authority of law, and therefore conveyed no title or rights which can be set up against the State or its assignee.

The plaintiffs in error may have a right to equitable relief from the State, but, in our opinion, the Legislature, and not the courts, should be applied to for that relief.

There were other questions raised in the pleadings, which we do not consider necessary now to examine, as the questions already decided dispose of the cause. We see no material error in the rulings of the court, or the instructions to the jury, that have not

XXXIV—38

been cured by the remittitur and waiver. The judgment is therefore affirmed.

Affirmed.