EDWARD PERRY v. Y. S. COLEMAN ET AL.

(Case No. 2635.)

1. PRE-EMPTIONS.— The act of May 26, 1873, entitled "An act for the benefit of actual occupants of the public land," extended the time in which to make affidavit of settlement and return field-notes to the general land office, twelve months from its passage, to all claimants who had occupied or who were occupying public lands. It revived the dormant equities of pre-emptors who had failed to return affidavit and field-notes within the required time, and they had the right to proceed under the pre-emption laws. The location of a land certificate on land so occupied was invalid as against the pre-emption.

APPEAL from Grayson. Tried below before the Hon. J. M. Lindsay.

June 30, 1874, Perry brought an action of trespass to try title against Y. S. Coleman, D. L. Coleman and H. A. Coleman for a tract of one hundred and sixty-one and one-half acres of land described in the petition, and alleged to have been patented to plaintiff March 26, 1874, under a file made August 25, 1873.

The defendants pleaded that on February 11, 1871, they in good faith settled upon a tract of land described substantially as in the petition, but not stating the number of acres, same being vacant public domain; that continuously from that date they have resided thereon, having made thereon valuable improvements; that on August 19, 1873, they made their affidavit, supported by oath of two credible witnesses, as required by an act entitled "An act for the benefit of actual occupants of the public lands," approved May 26, 1873, and returned the same to the general land office, as required by law; that they, on August 25, 1873, caused the same to be surveyed by the county surveyor, and had field-notes regularly returned to the land office, and that plaintiff had full knowledge, etc.

A jury was waived, and judgment rendered for the defendants. The plaintiff appealed, assigning error: (1) the judgment is contrary to law, and (2) it is contrary to the evidence and unsupported by it.

The agreed statement upon which the trial was had, and which is made the statement of facts, is as follows:

1. That defendants settled upon the land in controversy in good faith on the 11th day of February, A. D. 1871, and have remained in possession ever since, improving the land.

2. That on the 19th August, 1873, defendants made their affidavit of settlement before the district clerk of Grayson county, and had the same filed in the surveyor's office of said county, in accordance with the provisions of an act entitled "An act for the benefit of actual occupants of the public land," approved May 26, 1873.

3. That afterwards, 25th August, 1873, defendants had said land surveyed by virtue of this previous affidavit, etc., by the lawful surveyor of Grayson county, and returned said field-notes immediately to the general land office of the state of Texas, where they have remained ever since; and filed their affidavit, as prescribed by section 1 of said act, in the general land office in accordance therewith, supported by two credible witnesses.

4. It is agreed that plaintiff filed on said land on the 25th day of May, 1873, by virtue of the bounty warrant No. 351, issued to Francisco Garcia; that said Garcia certificate was a valid, subsisting claim against the state for land, and the plaintiff was and is the legal owner thereof.

5. That plaintiff, on the 14th day of June, 1873, had said land surveyed by virtue of the above named certificate, and, within the time prescribed by law, had said field-notes returned to the land office.

6. That, on 26th March, 1874, the land was patented to plaintiff, as assignee of said Francisco Garcia, by virtue of the above mentioned certificate, by letter patent No. 512, vol. 14, class Bounty; which patent is made a part of this statement of facts and filed (patent inserted, and calling for one hundred and sixty-one and a half acres).

7. That the agent of plaintiff, at the time he filed upon said land, knew that defendants were occupying the same; and, at the date of the issuing of said patent to plaintiff, his agent knew that the affidavit and field-notes of defendants were on file in the general land office of Texas.

*Gunter & Combs* and *Hancock, West & North*, for appel-
lant.

*Throckmorton & Browns*, for appellees.

A. S. Walker, J.— The construction and effect to be
given to "An act for the benefit of actual occupants of the
public lands," taking effect May 26, 1873, must determine
this case.

Under the constitution of 1869, and laws passed carrying
it into effect, the defendants settled upon the land. They
occupied it, making improvements upon it. These acts were
done in good faith.

The " act to regulate the disposal of the public lands of the
state of Texas," of August 12, 1870, and amended May 16,
1871, required such occupants claiming *homesteads* " to have
the same surveyed and the field-notes returned to the land
office within twelve months after settling upon the same,"
etc. (Pas. Dig., 7046).

The defendants had not complied with the law in having
the survey made and field-notes returned, etc.

In this state of facts, and with full knowledge of the
rights, if any, of the defendants to the land, the plaintiff
made his file May 25, 1873, under which patent was subse-
quently issued.

Did the act of May 26, 1873, revive the equity of defend-
ants, so as to take the land, by their subsequent compliance
with the law in making their survey, returning field-notes,
and making the required proof, etc. ?

Hemphill, C. J., in Jennings v. De Cordova, 20 Tex., 514, in
discussing the effect of the act of August 16, 1856, to ex-
tend the time in which pre-emption claimants could make
surveys, etc., as against an intervening locator, held, " The
pre-emption claim is in effect recognized as a dormant equity,
as one which had been a valid right to the land, but which
from delay had lost its force; which was not extinguished,
but by indulgence on the part of the grantor, could be re-
stored to life and vigor; and which, as long as the govern-
ment retained the fee in the land, might be consummated

into a perfect title. If, in the mean time, and before the passage of this act, the land had been located, surveyed and patented by another, the pre-emptionist would have lost all claim, and the statute could afford him no relief; but if the patent to the opposing claim had not issued prior to the statute, the original right of the pre-emptionist would be revived in all its force, and effectually preclude further action, and defeat the right under the location." Citing Warren v. Shuman, 5 Tex., 441, etc., etc.

The effect of this reasoning is not weakened by the fact that the case could probably have been decided upon other grounds.

The same doctrine as to the power of the state to revive a dormant equity as against a subsequent locator is given by Judge Roberts in Hamilton v. Avery, 20 Tex., 634 and 635, citing from the opinion.

"This court has held that the state, by a legislative act, may waive its right to exact of the citizen a strict and full performance of any one or more of his duties which have been imposed on him by these rules" (relating to process in obtaining lands). Citing the cases of Hart v. Gibbons, 14 Tex., 216; Warren v. Shuman, 5 Tex., 456; Lewis v. Mixon, 11 Tex., 570, and Jennings v. De Cordova, above, the opinion proceeds:

"In all the cases of this character, the right of the party had legally attached to the land, by the performance of duty in some of the steps; by a legal survey, pre-emption settlement, etc.; and this is what is called an equity. As soon as a party was in default by not performing a further duty enjoined upon him, the obligation of the government to make a grant to that land ceased to be imperative. None of its officers could be enforced by judicial process to recognize it as a subsisting right.

"It was discretionary with the government whether it would grant the land to another or not, and whether or not it would waive the non-performance of the neglected duty and give further time to do it. But if it chose to waive it, and in the mean time a third party had surveyed the land,

without getting a perfect title, during the dormancy of the original right, here we are presented two claimants to the land, equal in right so far as the performance of duty in the steps of acquisition are concerned; and it is reasonable, in deciding between them, that the older right, other things being equal, shall be preferred."

In construing the effect of an act confirming certain patents in the M. & P. railroad reservation, passed January 10, 1860, Wheeler, C. J., in holding that the act validating the patents issued during the existence of the reservation had· no retroactive effect, remarks: " As between these parties the defendant's right had its inception with the passage of the act in question. His (the holder of the patent held to have been illegally issued) location and patent being void, there was nothing on which it (the act) could operate by relation back to any antecedent time. The plaintiff's (the new locator subsequent to the lifting of the reservation) was prior in time and superior in right, and must therefore prevail." Sherwood v. Fleming, 25 Tex. Sup., 429.

This was followed and approved in Wright v. Hawkins, 29 Tex., 471, in favor of a locator and against a patent issued by direct legislative act upon a survey made during the existence. of the reservation and within its limits.

This distinction between the two classes of cases is recognized in Miller v. Hays, 42 Tex., 485. The pre-emptor, who by settlement, occupancy and improvements on vacant land, has commenced the series of acts designated as conditions to the grant to him, and those who have no claim nor such equity in the land, and who may be made the beneficiaries of legislative favor, as against adverse locations.

Reeves, J., in arguing says: " The plaintiff's claim does not come within the protection of the decisions referred to in the brief for him. Jennings v. De Cordova, Cravens v. Booth, etc. In those cases the settlement and improvement had been made during the time the statute donating lands to settlers was in force, but the claimant had failed to comply with the statute and was relieved by subsequent legislation. . . . In such cases the settler had such

equities as would prevail over a survey made for another party in the interval between the old law and the passage of the relief law."

Add to these cases the reasoning of Judge Moore in Johnson v. Eldridge, 49 Tex., 523, that " the actual settler and occupant of the soil has always been regarded with peculiar favor, both by the legislature and the courts. Statutes giving pre-emptions and laws for the protection of actual occupants have always been construed most liberally in favor of such pre-emptors and occupants," etc. " Actual settlers and occupants are always favored by our laws." Justice Gould, in Summers v. Davis, 49 Tex., 554. " Remedial acts should be construed liberally." Potter's Dwarr. on Stat., 231. By giving a liberal construction to the act of May 26, 1873, it can be regarded as extending the time for twelve months from its date to all claimants who had occupied public lands, and were occupying the same, subject to such occupancy, under existing laws (evidently as to continuity, good faith and duration), to have the land so occupied surveyed and the field-notes returned to the general land office. No exceptions exist in the act as to the extent of its operations or as to rights secured.

Following this train of decisions, the right of defendants to proceed under the pre-emption or homestead laws was restored. Their dormant equity being revived, plaintiff's location became invalid as against the pre-emption.

In this examination the following authorities have been consulted. We find nothing in them inconsistent with or adverse to the right of the legislature to extend the time in favor of the pre-emptor to comply with conditions in obtaining his title when such exemption was granted before the issuance of a patent to an adverse locator:

Hosner v. De Young, 1 Tex., 764; Trimble v. Smithers, 1 Tex., 790; Howard v. Perry, 7 Tex., 266; Warren v. Shuman, 5 Tex., 456; Lewis v. Mixon, 11 Tex., 570; Gibbons v. Hart, 14 Tex., 216; Cravens v. Booth, 17 Tex., 273; Jennings v. De Cordova, 20 Tex., 514; Hamilton v. Avery, 20 Tex., 634; Teel v. Huffman, 21 Tex., 782; Fowler v. Alred,

24 Tex., 185; Sherwood v. Fleming, 25 Tex. Sup., 428; Todd v. Fisher & Miller, 26 Tex., 239; Kohlhass v. Linney, 26 Tex., 334; Spier v. Lamon, 27 Tex., 216; Wright v. Hawkins, 28 Tex., 471; Pain v. Miller, 35 Tex., 79; Turner v. Ferguson, 39 Tex., 508; Miller v. Hays, 42 Tex., 479; Johnson v. Eldridge, 49 Tex., 523.

We do not regard the excess in quantity as stated in the petition as sufficiently shown in the record, or, if so, that it would render void the pre-emption or homestead claim. The quantity of acres included in the survey, as described in the answer and as in the judgment, is not given. The patent in evidence recites that the quantity is one hundred and sixty-one and one-half acres. The actual area covered by *the lines*, as given in the field-notes, is not shown. Before patenting, if the excess exists and was of sufficient importance under the rules of the land office, the survey would be corrected so as to reduce its quantity.

There being no error in the judgment, it should be affirmed.

AFFIRMED.