## LEWIS v. MIXON AND OTHERS.

Where an unrecommended certificate was surveyed before the 1st of January, 1844, and was established by suit brought in 1847, under the extension of time allowed by the Constitution of the State, it overreached and supplanted a patent for the same land, issued to another in 1848, although the survey on which such patent was issued, was made in the interval between the 1st of January, 1844, and the 16th of February, 1846 ; and it seems the result would have been the same, if the patent had issued at any time after the 16th of February, 1846, although before the suit to establish the unrecommended certificate had been instituted.

Appeal from Goliad. The plaintiff, Nathaniel Lewis, as assignee of Manuel Canima, was the owner of a headright certificate for a league and labor of land, one league of which was surveyed in 1838, and the field notes returned to the General Land Office. A patent on this survey being subsequently refused, for the reason that the certificate was not recommended by the investigating board of Commissioners, the plaintiff, under the provision of the Constitution re-opening the District Courts for the re-establishment of unrecommended certificates, brought his suit on the 10th June, 1847, and so prosecuted it as to obtain judgment on the 18th August, 1848, establishing the certificate. But in the meantime and during the pendency of the proceedings, one Samuel Mixon, now deceased, obtained patents on two certificates, located and surveyed within the boundaries of the said league. One of these patents was issued on the 22nd, and the other on the 29th of July, 1848. The Commissioner of the General Land Office having refused to patent the survey of plaintiff, on the ground of previous patents to Mixon, this suit is brought to have said patents declared void ; that the clouds of adverse claims may be removed from plaintiff's title ; and for general relief. This is the substance of the material facts in the petition. On demurrer the petition was dismissed.

*P. Lea,* for appellant.

*W. S. Glass*, for one of the appellees. The facts as disclosed by the original and amended petitions, are the same as those of the Warren and Schuman case, 5 Tex. R. 441, except that the patents of defendants were issued after the State Constitution took effect, and during the pendency of plaintiff's suit for the establishment of his certificate. The opinion in that case is believed to be decisive of this. The fee had passed from the government to the defendants before the plaintiff's certificate was established by the judgment of the District Court. (Warren v. Schuman, 5 Tex. R. 441.)

*A. S. Cunningham*, for two of the appellees. It is contended that the plaintiff had no certificate, and of course no right to land in the State, until the establishment of his certificate, which occurred after the issuance of the defendant's patent. It is plain that he had no equitable or legal right; for the true definition of these terms, is rights which may be remedied in Courts of law or equity.

Now the law of 1840 expressly prohibited any patent or survey to be made upon rejected certificates; and in the case of Hosner v. De Young, this Court decided that law to be constitutional, and that the holders of such certificates could acquire no right to land under them, either in law or equity; because both legal and equitable rights are cognizable in our Courts.

But the right is given them to sue the State. For what? Not for the land surveyed under these certificates; but to show that the claimant is entitled to his bounty. The rejected certificate is no evidence of the right, nor the survey, nor the patent; but full proof is required of all of the facts necessary by law to have been proven by the first law granting certificates. (Hart. Dig. p. 632, Art. 2035, 2036, 2037, &c.) And when the judgment of the Court is rendered, the claimant becomes entitled to a certificate from the District Court showing the amount of land to which he is entitled; not to have his old certificate confirmed with all of the rights acquired

under it. The foundation of all claims to headrights of land is the certificate. A survey without a certificate is void. It is true that when a rejected certificate has been surveyed, and a certificate obtained from the District Court under the law of 1841, and no intervening location, a patent might issue. So another certificate of the same size might be placed upon the same land, but the title dates from the application of the valid certificate to that survey.

In this case, however, not only had the right to the land become null, but the right to the bounty of the government became extinct on the 1st January, 1844; and that by the plaintiffs own laches. From that time he had no claim, legal, equitable or moral, upon the charity of the State. The land was to all intents vacant and subject to location.

Did then the 11th Article of the Constitution propose to give him a new remedy for its bounty? Or did it propose to appropriate certain lands claimed by him without right, upon the condition that he procured a certificate from the District Court, under the law of 1841? It will be seen by reference to that Article of the Constitution, " That the Courts are open to establish headright certificates." The whole of the body of the Article gives a remedy to procure certificates from the District Courts under the law of 1841. No new remedy is given for the recovery of lands, but only another opportunity to avail themselves of the bounty of the State. The surveys, patents and locations were void before; and the clause prevents the Legislature from keeping the Court open longer, and from rendering the claims for certificates good at any time in future.

But it is intimated in the opinion of the Court in the case of Warner v. Schuman, that the latter clause contains a negative pregnant with an affirmative.

With due deference to the opinion of the Court, we believe that the meaning of the convention is well expressed in the sentence, if a few words are transposed : " And all relocations, " made on such surveys, until the certificates are established

" as above directed, shall not be disturbed." This construction of this clause will agree with the laws as they existed at the time of the adoption of the Constitution; and it will be in strict accordance with the body of the Article, as well as accord with the intention of the convention, which was only to give the claimants another opportunity to procure certificates.

The other construction makes the proviso superior to the body of the clause, and the affirmative vastly more important than its negative matter. If there be any affirmative intended, it must be co-extensive with the language of the negative, to wit: After the certificates are established, the relocations may be disturbed. It revives the old certificate and survey, and confirms them and gives a right to the lands, such as may be enforced in our Courts of Justice, against all younger titles, either by location, valid survey or patent; for as the constitution is supreme, its dictates override all private rights that come in conflict with it. The necessary consequence of such a construction will be to revest, reinstate rights and actions, which have been divested, barred, and declared null and void by the Constitution and laws of the Republic, which contravenes the 20th Section, Constitution of the State, 4th Article. It is plain that if a location made since 1846, can be disturbed, locations made prior to that time can be, and even patents. But as the right of action or his right to the land, did not accrue until after title in defendant, such a strained construction will not be given, where it interferes with the rights of others previously and legally acquired.

But lastly the defendant's title to the land is plainly sustained by the Court in the case of Warren v. Schuman. The defendants' intestate has perfected his title in accordance with law, before even a foundation for any claim to land any where was obtained by plaintiff.

The defendants certificates were good; his survey was made on land vacant to all intents and purposes when surveyed; even his patent issued in accordance with law, without fraud or other defect; and the Court will not set aside a legal title thus acquired.

HEMPHILL, CH. J. Whether there be error in this decision or not, will depend upon which of the parties, plaintiff or defendants, has the superior right or equity to the land. The record does not show whether the land patented to Mixon, was located and surveyed anterior to the 16th February, 1846, the day on which the State Constitution went into active operation, or subsequent to that period. It will be seen, however, that the fact either way is not material. To assume that the location and survey were anterior to that day, would be the condition of facts most favorable to defendants, and in this aspect we will consider them, and adjudge upon their legal effect.

That the land, included within the boundaries of plaintiff's survey, was from the 1st January, 1844, to the 16th February, 1846, in contemplation of law, vacant; or rather that it was subject to location, survey and patent, in disregard of the rights of the plaintiff, cannot be doubted. Conceding, then, that the locations and surveys of Mixon were made prior to the constitutional provision, there is no doubt of their being made by lawful authority, and on land subject to location; and had they been patented prior to the 16th February, 1846, the plaintiff would have been precluded from setting up any pretensions in virtue of his original location and survey, although his certificate might have been subsequently, as it was, in effect, adjudged legal and genuine. (Warren v. Schuman, 5. Tex. R. 441.) The locations, surveys and patents of Mixon would then have been made at a time when there was no countervailing, paramount equity or right, at least none such as were recognized, or were cognizable in Courts of Justice.

But, although the locations and surveys of Mixon may have been prior to the 16th February, 1846, yet his patents were not issued until subsequent to the removal, by the Constitution, of the bar from the plaintiff's claims, and, in fact, until proceedings to test its validity had been instituted. What was the effect, then, upon the rights of the parties, of this renewed authority to sue on the claim of the plaintiff, and if just,

to have it re-established? Unquestionably, to suspend the rights of the relocator, in the condition in which they were found at the re-opening of the tribunals, to revive the rights of the original claimant, and if these were finally established, to extinguish altogether those of the relocator, and to vest the fee, or the right to a patent, in the original claimant. Such would be the legitimate result of the right to sue and re-establish the original claim, in all cases where the Government had retained the fee, or where it had not been relinquished to the relocator during the existence of the bar against adverse claims.

But we are not left altogether to deductions, as to the necessary or legitimate results of the revivor of the original right, if, on investigation, it were found to be genuine. The Constitution, Art. 11th, declares that relocations on surveys of unrecommended certificates shall not be disturbed until the said certificates are established. This, as we have said in Warren v. Schuman, is a negative pregnant with an affirmative. It negatives the right to disturb a relocation until the establishment of the original claim ; and by implication it affirms this right, when the primitive claim is adjudged valid. From the terms and import of the provision, and from the object to be secured by reviving the right to sue the Government, it cannot be inferred that the convention intended any thing more than that relocations should remain in the state in which they were found at the instant the original claim was quickened into life, and they should not be molested until the meritoriousness of the original claim was judicially ascertained. There was great propriety and justice in this reservation in favor of relocations. The land claimed under these relocations, had for more than two years been in effect vacant. It was well known that many of the original claims could never be re-established. It would have operated, then, great hardship, had the mere authority to sue annulled the rights of the relocators, or required them at once to remove their claims. But, while protecting the rights of the relocators, it was not

71

intended that those of the original claimants should be sacri-
ficed.   If his claim were just, he was in fact the greater suffer-
er of the two.·   His certificate had emanated from competent
authority, and his location and survey were made in conform-
ity with law.   By error on the part of the Government, or
its officers, he was denied the fruits of his claim.   The Gov-
ernment, willing to redress the evils inflicted, permits him
again to sue, and prove his .claim to be genuine.   Can it be
contended that in the mean time, and while the claimant is
prosecuting rights originally just, and which should always
have been recognized, the Government could rightfully con-
vey away the land to others, leaving him, at the end of a pro-
tracted litigation, with his naked certificate, but despoiled of
his lands ?   Certainly, it cannot be inferred that the Govern-
ment intended any such limited and imperfect remedy.

The intention of the Convention was, doubtless, to give to
the certificate, established under the Constitution, the effect it
would have had, if prosecuted and sustained under the Act of
1841.   On a claim re-established under that Act, the Commis-
sioner is directed to issue a patent in the same manner, as if
the claim had been recommended as genuine and legal by the
Detective Board of Commissioners.   (Art. 2037.)   Had it
been recommended by the Board as genuine, the claimant
would, no doubt, have been entitled to a patent for the land
previously surveyed; and he is equally entitled to a patent,
under the direction of the statute, to issue the patent in the
same manner, as if the certificate had been originally recom-
mended.   The effect of the implied affirmative, in the consti-
tutional provision, is substantially the same with the requisi-
tions in the statute.   The latter directs the patent to issue in
the same manner as on a recommended certificate, thus over-
riding all relocations and surveys which may, in the mean
time, have been made.   The latter, in effect, requires the re-
locations to yield to the original claim, if it be shown to be
legal and genuine.

That the relocation has equity, may be admitted ; but so

has also the primitive location.   And that being the case, the former must yield, on the principle that the equity prior in time is better in right.

The fact that Mixon has received a patent, cannot injuriously affect the rights of the original claimant.   His rights, (the original claimant's,) when established, relate back to the date of the authority to sue.   His claim, by such relation, becomes the older and better equity, not only from the judgment, but from the date of his authority to sue and establish his claim; and, of course, all acts, done in the mean time by the relocator, are null and void, as against the prior claim.   Nor can the relocator complain of this result.   He had full notice that his claims could not avail against those of the original grantee, if the latter were ever judicially established; that in that event his relocations were to be, or might, at the pleasure of the original claimant, be disturbed and held for naught.   He had not secured the fee, before the original claimant was authorized to sue.   That was still retained by the Government; and he was apprized, or might have been, that it would be ceded to the original claimant, as having the superior equity.   He cannot complain that the contingencies have been against him, and that the original claim having finally succeeded, his acts, in contravention of that claim, and to perfect his own title, have become nugatory.   (Mills v. Stoddard *et al.*, 8 Howard, 345.)

For the doctrine in relation to a junior patent being overreached by an older and a better equity, see Ross v. Borland, 1 Peters. 655; Les Bois v. Brammel, 4. How. 462; Warren v. Schuman, 5 Tex. R. 441.)

We are of opinion that the plaintiff has, on his averments, good cause of action; and it is therefore ordered that judgment be reversed and cause remanded.

Reversed and remanded.