JAMES E. FERGUSON ET AL. v. H. P. MANSFIELD ET AL.

No. 3432. Decided June 28, 1924.

(263 S. W., 894).

1.—Parties—Agency—Powers—Sale of Land—Distribution of Proceeds.

Heirs of D., claimants of land the title to which was disputed by others, made power of attorney to M. conveying him a half interest and authorizing him to clear title and sell. Selling a part thereof to F. he received in part payment a note to himself which he transferred to a bank to secure his

personal debt. Numerous and intricate transactions between M. and F. and others, purchasers and banks holding deposits in escrow and in trust, followed and were sought to be settled by an agreement as to distribution of funds and a suit concerning same in the course of which judgment was rendered disposing of the proceeds of such note, the interest recoverable thereon, and the lien securing it. To these transactions and to the suit the heirs of D. were not parties. *Held:*

(1) M. on taking the note became trustee and agent of D.'s heirs to collect same; but he had no authority except to collect in money, and none to pledge it to the bank to secure his own debt. (2) The heirs of D. were necessary parties to the action which disposed of their rights in the note, and it was error to refuse to make them parties. (Pp. 123-125).

**2.—Agency—Sale of Land—Agent Acquiring Interest.**

Facts considered are held to present an issue as to whether a sale of land by an agent was in pursuance of an arrangement by which he was to become jointly interested with the purchaser, and this without his principal's knowledge, and whether the transaction was permissible under the rules of agency. (Pp. 125, 126).

**3.—Note—Maturity—Condition.**

A note having no maturity date, but payable only upon a contingency, is not due until the happening of such condition. If equitable conditions exist requiring it to be paid in part though not due by its terms, these must be pleaded and proven to obtain such relief. (P. 126).

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

The action was by Mansfield and others against Ferguson and others. Defendants Ferguson and the Temple State Bank appealed from the judgment and obtained writ of error on its affirmance (215 S. W., 234).

*Love, Wagner & Wagner,* for plaintiffs in error (*Love & Fouts,* on appeal).

In a suit for the partition of a fund jointly owned or claimed by different parties, brought by one of the claimants of an interest therein, all parties interested in, entitled to or having claims upon any part of such funds so sought to be partitioned and distributed, are necessary parties to the suit, and a petition seeking such partition and distribution which fails to disclose that all the parties interested in said fund are made parties, but affirmatively discloses that there are other parties interested in or having title to an interest in such funds who are not made parties by the petition, is subject to a general demurrer. De La Vega v. League, 64 Texas, 205; Ship Channel Company v. Bruly, 45 Texas, 8; Latham v. Tombs, 32 Texas Civ. App., 270, 73 S. W., 1060; Hanner v. Summerhill, 6 Texas Civ. App., 764, 26 S. W., 906; Summerhill v. Hanner, 72 Texas, 226; Stachley v. Peirce, 28 Texas, 328; Holliman v. Rogers, 6 Texas, 91; Barlow v. Linss, 180 S. W., 652; Williams v. Railway Co., 82 Texas, 553; Zwernerman v. Rosenberg, 11 S. W., 150;

Railway Company v. Ellis, 153 S. W., 701; Railway Company v. Oliver, 159 S. W., 853; Needham v. Cooney, 173 S. W., 979.

A recovery cannot be had by or on behalf of the payee in a non-negotiable note or conditional obligation which by its terms expressly provides that the same shall not become payable except upon certain conditions to be thereafter determined, unless it is shown that the conditions under which the same is to become payable have been met or complied with.

*Kittrell & Kittrell,* for defendants in error.

Plaintiff in error Ferguson having contracted and bound himself to pay the $2500.00 note to "H. P. Mansfield, attorney," by so giving the note and having more than once recognized that it was payable to Mansfield by contracting it should be paid to him (Mansfield) before the fund was divided between him (Ferguson) and Mansfield, and the Davis heirs having made the sale, and ratified the sale with the note payable to Mansfield as part of the consideration, plaintiff in error, Ferguson, cannot be heard to object to want of parties; first, because as he bound himself, so must he be bound; and second, because if any person has an interest in the land and desires to assert it, who is not bound by the decree in this case, such person can have his day in court; third, because the answer to a demand for payment of the note that the party suing is not the owner of the note is not good in law, since Mansfield having legal title to the note had the right to recover notwithstanding another or others may have had the equitable right to a part or even a whole of the proceeds. It is a general rule applicable to all written contracts that he who has the legal title may maintain an action upon it, notwithstanding another may have the equitable right to the proceeds of it when it is collected. Thompson v. Cartwright, 1 Texas, 88; McMillan v. Croft, 2 Texas, 397; Knight v. Holloman, 6 Texas, 153; Wimbish v. Holt, 26 Texas, 674; Collins v. Bank, 75 Texas, 254; Allison v. Insurance Co., 87 Texas, 595; Insurance Co. v. Williams, 79 Texas, 637; Mensing v. Ayres, 2 App. C. C. (Willson) 479; Sparks v. Coals, 22 Texas Civ. App., 455, 54 S. W., 913; 31 Cyc., 1632; 8 Cyc., 79.

*L. B. Moody* and *Lewis R. Bryan* for McDonald and West, defendants in error.

Mr. Chief Justice CURETON delivered the opinion of the court.

This suit was brought by H. P. Mansfield against the Temple State Bank, James E. Ferguson, C. F. Stevens, Dayton Mills, a corporation, Duval West, R. McDonald, and Mary McDonald, individually and as independent executrix of the estate of R. McDonald, deceased, and the Houston National Exchange Bank. The suit is

an equitable one in its nature, involving an accounting and various other matters of an equitable character, including a receivership.

The judgment in the trial court was for Mansfield and others, and the appeal by Ferguson and the bank. The case was affirmed on appeal. 215 S. W., 234. Writ of error was granted, and the case first affirmed on recommendation of the Commission of Appeals. Rehearing, however, was granted, and the case heard by the Supreme Court.

We will not undertake to make a complete statement of the case, since the opinion of the Court of Civil Appeals is available.

On June 6, 1902, and October 10th of the same year, certain parties, who will be hereafter designated as the Davis heirs, executed powers of attorney to the defendant in error H. P. Mansfield. The powers of attorney were coupled with a one-half interest, conveyed to Mansfield, and relate to certain land in Liberty County, which, or the proceeds of which, is involved in this litigation. By these powers of attorney the Davis heirs authorized Mansfield, as attorney in fact, in their "name, place and stead" to ask, demand, sue for and clear the title to the lands involved, and to "sell, convey and dispose of these lands." He was authorized to clear the title to the land, empowered to sell it, make deeds thereto, and "to perform any and all acts necessary to be done in and about the business of recovering and clearing the title to said land", as fully as the Davis heirs might do. No sale of any of the land, or the timber, or any compromise with reference to any part of same, could be made by Mansfield until the same had been first submitted to and ratified either by J. V. Lea or C. B. Martin, two of the parties who signed the powers of attorney. This was all the authority conferred upon Lea and Martin.

It may be noted here that none of the Davis heirs were made parties to this suit, and that the action was brought by H. P. Mansfield for himself, and not as an agent or attorney for the Davis heirs. Mansfield, however, prayed for a general accounting, and in the course of the accounting asks that he be accounted to as attorney named in a certain note for $2500, hereafter referred to.

On January 13, 1910, the plaintiff in error, James E. Ferguson, and L. Fouts, of Liberty County, entered into a contract, the contents of which is not disclosed by the record, except that it related to the lands made the basis of this litigation, and provided, among other things, for the cutting of timber and payment therefor. The contract is not in the record. Fouts acted for the Dayton Lumber Company, but Ferguson finally took the land back, and sold it directly to the Dayton Lumber Company for $48,000.

At the time of this agreement, and thereafter, in so far as the record discloses, the plaintiff in error, Ferguson, owned or held

powers of attorney from all of the Hardin heirs who claimed an interest in the land, except perhaps two small interests, not necessary to be discussed at this time.

By deed dated the 14th day of January, 1910, the Davis heirs, acting by their attorney, H. P. Mansfield, as their attorney in fact and for himself, and joined by J. V. Lea and C. B. Martin, conveyed to Ferguson those parts of Leagues 6 and 9 of the Martinez Eleven League Grant in Liberty County which form the basis of this lawsuit. The lands were described by field notes, and were said to be approximately 3200 acres. The deed was a quitclaim deed, or a special warranty, which warranted the title to Ferguson only against persons claiming under the grantors. The consideration named in the deed was $4712, paid and secured to be paid by Ferguson, as follows:

"The sum of Two Thousand Two Hundred and Twelve ($2,212.00) Dollars, cash, the receipt of which sum is hereby acknowledged and the sum of Two Thousand Five Hundred ($2,500.00) Dollars to be paid in accordance with the provisions of a certain nonnegotiable note executed by the said James E. Ferguson, of even date herewith, and hereinafter described and mentioned, which said note is payable to the said H. P. Mansfield, attorney."

The deed contains an additional reference to the note just described, reading as follows:

"Whereas part of said above described tracts of land are now claimed by certain parties who claim to dereign title to a part of said land under and by virtue of what is known as the R. W. Shattuc locations, Numbers 62, 63 and 64, which are fully described in Volume 13, pages 540, 542 and 543 of the Deed Records of Liberty County, Texas, in a conveyance to Herman Prassler. reference being here made to said records for a more particular description of said land; and,

"Whereas it is contemplated that it will take some time to clear the title to said Shattuc locations;

"Now, therefore, it is agreed that the said nonnegotiable note for Two Thousand Five Hundred ($2,500.00) Dollars, above mentioned and described, which is to be executed by the said James E. Ferguson, shall not become due and payable until the said James E. Ferguson or his associates shall successfully litigate and defend his title against said R. W. Shattuc locations above described, and when he shall have successfully defeated by litigation the claim of said parties under said R. W. Shattuc locations, then said Two Thousand Five Hundred ($2,500.00) Dollar note shall become due and payable; and the vendor's lien is hereby retained to secure the prompt payment of said Two Thousand Five Hundred ($2,500.00) Dollar note.

"It is understood and agreed, however, that the said James E. Ferguson shall have the right and privilege to pay off said note in full at any time that he may desire and he shall then be entitled to a full release of all our said claims against said land."

The note is shown in the record, and by its terms Ferguson agreed to pay the $2,500 in accordance with the terms of the deed, with interest at seven per centum per annum. The note had no maturity date, except that disclosed by the deed. This note had the following endorsement on the back of it:

"I hereby transfer my interest in this note.
"J. V. Lea.
"H. P. Mansfield.
"H. P. Mansfield, Attorney."

This note was afterwards assigned by written transfer by Mansfield to the Houston National Exchange Bank to secure a debt of Mansfield. There is nothing in the record indicating authority on Mansfield's part, or on the part of Lea, to make any transfer of the Davis heirs' interest in this note. J. V. Lea had no authority to assign any interest in the note except his own.

The deed executed by Mansfield, for himself and as attorney for the Davis heirs, was dated January 14, 1910, but it was not acknowledged by Mrs. Mansfield, nor by Messrs. Lea and Martin, until January 19, 1910. On the day following the acknowledgment of this conveyance from the Davis heirs by Mansfield to Ferguson, to-wit: on January 20, 1910, a contract was entered into between Mansfield and Ferguson, dated and acknowledged January 20, 1910, the substance and effect of which, in so far as is necessary to be stated, is that Ferguson is due Mansfield a cash consideration of $2212.00 for Mansfield's deed just above described, conveying 3000 acres of land off the west end of Leagues 6 and 9 of the Martinez League Grant in Liberty County. The instrument recites that it is agreed "on the part of the said H. P. Mansfield that in lieu of said cash consideration he will accept and is to receive in settlement of said moneys, as well as other moneys this day contracted to be left with the Temple State Bank of Temple, Texas, subject to the joint check of said Mansfield and Ferguson upon the following promises and agreements made with and to him by the said James Ferguson." The contract provides that Ferguson and Mansfield "are and do become by this contract equally and jointly interested in a certain contract made between the said James E. Ferguson and L. Fouts, of Liberty County, Texas, bearing date January 13, 1910, and the same being now on deposit with the Union Bank and Trust Company of Houston, Texas." to which reference is made for descriptive purposes. Here follow certain conditions not material to this inquiry. The agreement states that it was contemplated that it would take

approximately $7500.00 to settle the claims of adverse claimants to the land, and "the parties hereunto have each deposited the sum of $3750.00 in the name of Mansfield and Ferguson with the Temple State Bank of Texas, to be used for said purposes." It is to be noted that on the date of this instrument, to-wit: January 20, 1910, the parties in the instrument recited, not that they intended to deposit the money in the Temple State Bank, but that "the parties hereto *have* each deposited" the money. The instrument was dated and acknowledged at Houston on the day of its date, to-wit: the 20th of January, 1910. It is obvious, therefore, that under the terms of the instrument itself the parties had previously deposited in the Temple State Bank the money referred to.

It is plain from reading the contract that the $2212.00 cash consideration required to be paid by Ferguson under the terms of the deed from the Davis heirs to him had not been paid, either to the heirs or to Mansfield, on the date of this contract, by which Mansfield acquired his joint interest in the Davis heirs' land with Ferguson.

By warranty deed, dated August 1, acknowledged August 12, 1911, James E. Ferguson conveyed to the Dayton Lumber Company parts of Leagues Nos. 9 and 6 of the Eleven League Grant issued to William Hardin as attorney for Jose Dolores Martinez, and which includes the land forming the basis of the present controversy. The consideration was $48,005.00, $48,000.00 of which was evidenced by six mortgage bonds of the Company, numdered 1 to 6, inclusive, payable to the order of James E. Ferguson on the first of August of the years 1912 to 1916, inclusive,—with the exception of No. 1, which was due September 1, 1911; each bond being for the sum of $8000.00, bearing six per cent. interest per annum from date until maturity, in accordance with coupons thereto attached, and ten per cent. annually after maturity; together with provisions for attorney's fees, etc. The bonds were payable, both principle and interest, at the Temple State Bank, at Temple, Texas. A vendor's lien was retained to secure the payment of the bonds. The bonds were executed in payment for certain tracts or parcels of land in Liberty County, and being parts of Leagues Nos. 9 and 6 of an Eleven League Grant issued to William Hardin as attorney for Jose Dolores Martinez. Other matters not material here were in the deed.

On the same date as this deed, Ferguson and the Dayton Lumber Company entered into what has been described in this record as the original escrow agreement. This agreement was executed as a part of the same transaction as that evidenced by the deed, and it was expressly declared that the two instruments are to be considered as parts of the same contract and construed together. The escrow agreement recites the execution of the deed which has just been described, and makes special reference to the notes or bonds there

referred to.  It recites that the title to a portion of the land conveyed by the deed is in dispute, and it is necessary to prosecute to termina-tion litigation then pending, in order to perfect the title to the land. It then describes the three tracts of land in dispute; and which tracts of land will be hereafter referred to as the Shattuc locations,— these several tracts of land being embraced in the land conveyed by the deed from the Davis heirs to Ferguson, and from Ferguson to the Dayton Lumber Company.  The agreement states that the Lumber Company desires to withold the delivery of three of the bonds described in the deed until the title to the above described three tracts of land is successfully established against the parties claiming said tracts of land under what is known as the Shattuc locations. It was agreed that three of the bonds, being numbered from 4 to 6, and due and payable August 1st of the years 1914 to 1916, inclusive, should be deposited in the office of the Lumbermen's National Bank of Houston, Texas, to be held by the bank for three years, unless sooner withdrawn by consent of the parties, or delivered under the terms of this agreement.  The agreement provides that if Ferguson within three years from the date of the instrument should perfect, or cause to be perfected, the title to the said three tracts of land as against the Shattuc locations, then the bank was authorized and empowered and required to deliver and turn over to Ferguson the said three bonds above referred to.  It was provided, however, that if "the said James E. Ferguson does not perfect the title to said three tracts of land above described as against the parties claiming the same under the title known as the Shattuc locations, within three years from this date", then that the bank should return the bonds to the Lumber Company; and upon the delivery of the bonds to the Lumber Company, the title to the said three above described tracts of land "shall be deemed never to have passed to said Dayton Lumber Company, and shall become the property of the said James E. Ferguson, without the necessity of further conveyance."  It was provided that no money derived from the last three bonds should be paid to James E. Ferguson, until the title to said three tracts of land was perfected against the Shattuc locations, at which time he would be entitled to receive the money.  But in the event it should be judicially determined that Ferguson, his heirs or assigns, did not own said three tracts of land, then all the money deposited under the agreement with reference to the same should be refunded by the Temple Bank to the Dayton Lumber Company.  The land embraced in the three tracts was 1778.7 acres.

On May 4, 1912, Ferguson, Mansfield, and the Temple State Bank entered into what is known in the record as the disbursement agreement.  The agreement recites that Ferguson and Mansfield were interested in three bonds or notes, each for the sum of $8000.00,

being the ones heretofore described as having been executed by the Dayton Lumber Company in favor of Ferguson, and being a part of the purchase money for the lands made the basis of this suit, and being specifically the three bonds deposited with the Lumbermen's National Bank of Houston, subject to the conditions of the escrow agreement heretofore described. This agreement recites that the parties desire to enter into a "disbursement" agreement as to the proceeds of said bonds when collected. This particular contract provides that the agreement heretofore described as having been entered into between Ferguson and Mansfield on the 20th of January, 1910, should remain in full force and effect, except as modified or changed by this disbursement agreement. This agreement states that it is understood and agreed between the parties that as soon as the Lumbermen's National Bank should be required to deliver the three bonds which were deposited with it to the said James E. Ferguson under the terms of the deposit agreement, which terms, as we have already seen, were that the title to the land should be cleared of the Shattuc locations claims, that the Lumbermen's National Bank, instead of delivering the bonds to Ferguson, should deliver the bonds to the Temple State Bank "in escrow", and that the Temple Bank should be authorized and empowered to collect bonds, and out of the collections disburse the same in the following manner, to-wit:

"There shall first be paid to the owner or holder of one certain note for the sum of Twenty-five Hundred Dollars ($2500.00) executed by the said Jas. E. Ferguson and payable to the order of H. P. Mansfield, Attorney; said note being given in payment for the interest of the Davis heirs in land purchased by the said Jas. E. Ferguson, and in turn sold to the Dayton Lumber Company.

"Second. There shall be paid to C. F. Stevens the sum of Three Thousand Dollars ($3000.00 in full settlement of his attorneys fees and all his interest in said notes, and the land for which the same were given in payment.

"After the payment of said Twenty-five Hundred Dollar ($2500.00) note, to H. P. Mansfield, and the payment of said Three Thousand Dollars ($3000.00) to C. F. Stevens, it is agreed by and between the parties that the remaining balance of Twenty-one Thousand, Five Hundred Dollars ($21,500.00) and all accrued interest on said bonds which may be collected by said Temple State Bank, shall be owned by the following parties in the following proportion, that is to say:

| | |
|---|---|
| Jas. E. Ferguson as Assignee and agent, and Attorney-in-fact for the Hardin Heirs has an interest of | $4625.00 |
| H. P. Mansfield, individually has an interest of | 5203.00 |
| Jas. E. Ferguson has an interest of | 5203.00 |

Leaving a remaining interest of Thirty-four Hundred, Sixty-eight and 75/100 ($3468.75) Dollars, one-half of which amount the said Temple State Bank shall be authorized and required to pay over to the said Jas. E. Ferguson when collected; the remaining one-half interest in said sum of Thirty-four Hundred, Sixty-eight and 75/100 ($3468.75) Dollars to remain on deposit in said Temple State Bank until the said Jas. E. Ferguson shall be relieved from liability on a possible claim of what is known as the Stearne heirs by all Statutes of Limitation or otherwise.''

This disbursement agreement was signed by James E. Ferguson and H. P. Mansfield, and neither in its initial provisions nor by his signature does H. P. Mansfield purport to act other than in his individual capacity; that is, he does not purport to act as attorney for nor on behalf of the Davis heirs, although it is quite clear the instrument does affect the Davis heirs to the extent of their interest in the $2500.00 note. There is nothing in the record to indicate that Mansfield in entering into this agreement had any authority to do so from the Davis heirs as part owners of the $2500.00 note.

On the 23d of December, 1916, judgment was rendered against Ferguson for 509.1 acres of land, being a portion of what has heretofore been described as the Shattuc locations. The case was appealed and the judgment affirmed.

Arch McDonald and other defendants who recovered this land claimed a portion of the fund deposited in the Temple State Bank, under certain agreements not necessary to describe, and were awarded a recovery therefor. The Davis heirs were not parties to any such agreements.

The Houston National Exchange Bank answered, admitting that it had an assignment from Mansfield of the interest in the amount due Mansfield out of the fund deposited in the Temple State Bank, and pleaded specifically that on or about the 25th of August, 1915, Mansfield had sold and assigned to the bank ''one certain note signed by James E. Ferguson, for the sum of $2500, dated January 14, 1910, payable to the order of H. P. Mansfield'', etc., which is in fact the $2500 note which has been heretofore described. They also stated that the assignment included all interest of the said Mansfield, amounting to $10,419.35, in and to three certain mortgage notes executed by the Dayton Lumber Company to Ferguson. The assignment shows that the note and fund and the interest in the other notes are assigned as security for a debt due by Mansfield to the bank for the sum of $5500. The bank alleged by reason of the assignment and transfer and the facts stated that it was entitled to recover so much of the fund ''that has been deposited in escrow in said Temple State Bank'' as might be required to liquidate the note of Mansfield to it. A copy of the assignment was attached to the pleading. The assignment was executed by H. P. Mansfield, and

recites that he had bargained, sold, transferred, and delivered to the Houston National Exchange Bank the following described notes and property. (Here is described the $2500 note heretofore set out in this opinion, and also Mansfield's interest in the Dayton Lumber Company notes.) In this assignment there is recited: "In transferring said notes I also grant, bargain, sell, and convey unto the Houston National Exchange Bank, of Houston, Texas, the superior title in and to the above described premises remaining in me, together with all of my interest in and to said premises."

The Dayton Mills answered, and after general demurrer and general denial it pleaded a cross action against Mansfield, the Temple State Bank, James E. Ferguson, and all the other defendants named in the petition. It alleged the purchase of the lands heretofore described from Ferguson for a total consideration of $48,005; alleged the substance of the deed and agreement, which has been heretofore described, between it and Ferguson, pleaded the agreement made by it with the McDonalds and West, to the effect that in the event the last named parties recovered any part of the Shattuc locations, the Lumber Company would pay them the same amount for the land recovered by them that it had agreed to pay Ferguson, and that they would convey to the Company the lands so recovered on substantially the same terms and conditions that they were conveyed to Ferguson, and that the McDonalds and West "should be paid therefor out of the funds deposited in the Temple State Bank, so far as applicable"; and that in effect the Lumber Company conditionally assigned to the McDonalds and West sufficient moneys deposited in the Temple State Bank representing the acreage they might recover for the purpose of paying for such land. The answer then alleged the recovery of 509.1 acres of land, which it describes by metes and bounds in its cross bill. It alleged that West and the McDonalds had become entitled to their pro rata of the moneys deposited in the Temple State Bank, and to their pro rata of the moneys remaining unpaid, and tendered the unpaid portion of the money into court. It pleaded that Ferguson and Mansfield ratified and consented to the arrangement for the cutting of the timber on the Shattuc locations as pleaded, and allowed the cutting of the timber under said arrangements, and that neither Ferguson nor Mansfield could be heard to set up any claim against the carrying into effect of that agreement. It then alleged the deposit of $24,000 in the Temple State Bank. It then pleaded specifically the facts with reference to the $2500 vendor's lien note executed by Ferguson, which has heretofore been described, as being a part of the consideration for the Davis heirs' deed, and stated that this deed reserved a vender's lien to secure the payment of this note, and alleged that the note was held by Mansfield and by the Houston National Exchange Bank, and asked

that the note be deposited among the papers of the cause, that it be cancelled and "payment thereof satisfied out of the funds on deposit in the Temple State Bank, and here tendered into court by this defendant", and prayed that the vendor's lien securing the payment of this note be cancelled. It asked that all the right, title, and interest of the plaintiff H. P. Mansfield and of the defendant James E. Ferguson in and to the lands and premises be cancelled and vested in the Lumber Company.

Ferguson in part pleaded that the Davis heirs were beneficiaries or owners of a part of the $2500 note which was heretofore described, and were necessary parties to the suit, and that no distribution of the funds sued for could be made until the Davis heirs had been made parties to the suit. He prayed that the Davis heirs, naming them, be made parties to the suit.

On December 18, 1917, when the case was called for trial, plaintiff in error James E. Ferguson filed a motion for continuance, on the ground that the Davis heirs were necessary parties to the suit. He set forth at length the claims of the Davis heirs. The motion for continuance was overruled.

On the trial of the case there was introduced in evidence, on behalf of Ferguson, a letter from F. Campbell to James E. Ferguson, dated November 14, 1917, in which Campbell states that some years ago "we executed to H. P. Mansfield, of Houston, a power of attorney, coupled with a half interest, involving the Davis title to the Martinez Leagues six and nine, in Liberty County. About six years ago Mansfield reported that he had sold out title to you for approximately five thousand Dollars ($5000) and that you had paid him twenty-five hundred (2500), of which he accounts for one-half ($1250), that in some given time, I do not now remember, you would pay the remainder, at which time he would account for the other half." Campbell's letter then reads in part: "Now, the newspaper account of this suit against you in Harris County, which I believe was only brought to hurt you especially at that time, shows that he did not convey this title to you, or if he did there was some secret reservation on his part to defraud us, his clients, of our half of about twenty-four thousand dollars ($24000). Please write me the exact facts about this matter as I am going to file suit against Mansfield for the proper amount and I want to hold the same money to answer the judgment that he is attempting to hold by a receiver."

The first question which presents itself in this record is whether or not the Davis heirs were necessary parties to this suit. We have concluded that they were.

We will first examine into the question of Mansfield's dealings with the $2500 vendor's lien note, previously described, and whether or not he had the power to make the agreement pleaded and shown

with reference to same, and the authority to represent the Davis heirs in this suit in the matter of the relief asked against them. It is obvious Mansfield had no general power of attorney to represent the Davis heirs in all respects. When he had recovered the lands described therein, and sold them, his authority ended.

Without approving or dissenting from the proposition that since the vendor's lien note was payable to "H. P. Mansfield, attorney", he could collect the same or sue upon default, we will determine the limits of that power, and see if these have been respected or accepted. At most, it can only be said that under the note and power to sell, Mansfield, after the execution of the note, was the trustee and agent of the Davis heirs to collect the same in accordance with its terms. As such, his power was limited to collecting the note in money. 31 Cyc, pp. 462, 463; 14 Michie's Texas Digest, p. 41; Kempner v. Rosenthal, 81 Texas, 12; Robson v. Watt's Heirs, 11 Texas, 764. Mansfield was without power to pledge the note to secure his own debt. Authorities supra; Oliphant v. Markham, 79 Texas, 543; 14 Michie's Texas Digest, pp. 43, 44, 48; 31 Cyc, 1375, 1390.

Mansfield not only assigned the note, half of which was owned by the Davis heirs, both by endorsement and written assignment, to secure his own debt to the Houston National Exchange Bank, but said in the assignment: "In transferring said notes I also grant, bargain, sell and convey unto the Houston National Exchange Bank, of Houston, Texas, the superior title in and to the above described premises remaining in me, together with all of my interest in and to said premises."

The Bank pleaded, relied on and obtained a judgment on this assignment, and the court directed that any collection on the judgment in favor of Mansfield should first be applied to the payment of Mansfield's debt to the Bank.

In the so-called disbursement agreement heretofore described, it was provided that there should be first paid out of the funds the sum of $2500 to the owner of the $2500 note heretofore described. Ferguson contended that only the principal of this note was to be paid, at all events, under the escrow agreement, and apparently this view was accepted by the trial court, which found that the escrow agreement did not provide for the payment of any interest on the $2500 note, and awarded judgment for the face of the note only, without interest, except six per cent. from the date of the judgment, *and did not award a foreclosure of the vendor's lien,* and because of the deposit of the funds in the Temple State Bank cancelled the note and lien. It is thus seen that the changes wrought by the disbursement agreement, in addition to the denial of a foreclosure of the vendor's lien, deprived the Davis heirs of a very substantial sum, and that, although under the judgment Mansfield

obtained as against Ferguson and the Bank jointly six per cent. interest on all the funds deposited in the bank under the escrow agreement, and profited thereby, no such amount was awarded to the Davis heirs on the $2500.00 note.

There is neither pleading nor evidence in the record which indicates any authority on the part of Mansfield to bind the Davis heirs by any such agreement or judgment, if any recovery at all could be had as to the note.

In addition to the above, the court, in response to the pleading of the Dayton Mills (successor to the Dayton Lumber Company), cancelled the note and the vendor's lien securing it, and directed that its payment should be satisfied out of the deposit in the Temple State Bank, and awarded title to the lands to the Lumber Company (Dayton Mills).

It is therefore obvious, by reason of the contracts and agreements of Mansfield with Ferguson, the Temple State Bank, and the Dayton Lumber Company, according to the judgment of the court, that in lieu of the Davis heirs' interest in the $2500 vendor's lien note, bearing interest as heretofore shown and secured by a lien, not alone upon the Shattuc locations, of which a part was lost, but upon the entire 3200 acres deeded to the Dayton Lumber Company, that they are compelled to accept interest on the principal sum of $2500 only, at the rate of six per cent. from the date of the judgment only, and to accept and are awarded in the name of Mansfield, attorney, an unsecured judgment against Ferguson and the Temple State Bank— the evidence showing that at the time of the trial all the money deposited in the bank had been withdrawn therefrom by Ferguson— and this in lieu of the judgment for the face of the note with interest secured by a lien on the property for which the Lumber Company had agreed to pay approximately $48,000. It is too plain for argument that the Davis heirs were necessary parties, if any such decree as this was to be entered binding on them. Authorities supra; 31 Cyc, pp. 1383, 1384, 1385, 1394.

We think the record shows that at the very time that Mansfield acknowledged the deed from the Davis heirs to Ferguson, he and Ferguson had already entered upon the enterprise of jointly acquiring and owning the interest of the Davis heirs in the identical land conveyed by him, as attorney for the Davis heirs, to Ferguson. Neither Mansfield nor Ferguson testified as to the matters leading up to and resulting in the conveyance of the land to Ferguson, or when Mansfield acquired his interest therein, or when the negotiations were begun, or that the Davis heirs were informed or knew anything of the fact that Mansfield was the purchaser, or was to become jointly interested with the purchaser. It is also equally certain that the lands involved were sold for some $48,000, and that, except for

the loss entailed by the failure to sustain the title to 509.1 acres, this fund became the subject matter of this litigation. We think, under the facts as disclosed by the record, the issue is clearly raised as to whether or not the action of Mansfield in becoming a joint owner with Ferguson of the property was permissible under the rules of agency. 31 Cyc, pp. 1430, 1432, 1437, 1438, 1439, 1434, 1435.

The Davis heirs were necessary parties, not only for their own protection, but for the protection of Ferguson, the Temple State Bank, and the Dayton Lumber Company, as well.

The statement previously made shows that the $2500 vendor's lien note had no maturity date, except that declared in the deed, which stated that the note "shall not become due and payable until the said James E. Ferguson, or his associates, shall successfully litigate and defend his title against said R. W. Shattuc locations above described, *and when he shall have successfully defeated by litigation the claim of said parties under said R. W. Shattuc locations, then the said $2500 note shall become due and payable.*" (Italics ours). It thus appears that this note was a conditional obligation, payable upon the happening of a specific event, to-wit: that Ferguson successfully defeat by litigation the *claim* of the parties under the Shattuc locations.

It is quite elementary that an instrument payable upon a condition which does not import an absolute liability, is not payable until that condition has happened. Salinas v. Wright, 11 Texas, 571; Carlisle v. Hooks, 58 Texas, 420; see notes to case of Hughes v. McEwen, L. R. A. 1917B, pp. 1051 to 1057; Swift Coal & Timber Co. v. Lewis, (Ky.) 186 S. W., 479.

Ferguson did not defeat "the claim of said parties"; and it is clear, therefore, that under the letter of the contract and in the light of the authorities the note never did become due and payable.

"The claim of the parties" under the Shattuc locations embraced approximately 1788 acres of land, and Ferguson in the legal contest thereover lost 509.1 acres, a substantial amount of the acreage and value involved.

Neither the deed nor the note provided for anything to become due in the event of such a loss. Mansfield pleaded that the whole note was due, but that if the whole amount could not be collected, then that the note should be paid pro rata, having in view the consideration therefor and the amount of the loss. However, the facts, if there are any admissible facts, in addition to the deed and notes, surrounding the transaction, are not in evidence. Neither Ferguson nor Mansfield testified in reference to the matter. If any part of the note is collectible, it must be for equitable reasons, which must be pleaded and proven.

In the decree of the trial court it rendered judgment for C. F. Stevens for $500. Stevens was a party defendant, but filed no

answer and made no claim to this or any other amount. The evidence is undisputed that whatever interest Stevens had in the fund was the property of Ferguson, and the court erred in rendering judgment in Stevens' favor for the amount named as against Ferguson and the Temple State Bank.

We deem it unnecessary to discuss the other errors assigned.

The case is reversed and remanded.