**DEALERS' GRANITE CORPORATION v. FAUBION.** (No. 7306.)

Court of Civil Appeals of Texas. Austin.
May 29, 1929.

738

BAUGH, J. Appeal is from a judgment for appellee, Faubion, against appellant corporation upon three promissory notes executed by it to him under the following circumstances:

On April 28, 1923, Grady Faubion and Philip Welhausen entered into a written contract whereby Faubion, for a consideration of $5,000 to be paid him by Welhausen, agreed to convey to the latter two quarry leases held by him on lands in Llano county, Tex., and certain machinery, tools, etc., used thereon. Said contract also provided:

"As a further consideration of said transfer, the said Faubion shall be paid the sum of $7,500, in three installments of $2,500, each payable six months, twelve months and eighteen months after date out of the net profits of the company hereinafter to be organized.

"The said Welhausen agrees upon the transferring assignments of the leases, to use due diligence to procure a charter from the State of Texas, with a capital stock of $75,000, fully paid, of which the said Welhausen is to own and hold $45,000, of said capital stock, and said Faubion $25,000 of said capital stock and L. H. Baldwin, $5,000 of said capital stock.

"Upon the formation of said company as above stated, which is to become the owner of said leases and property herein contracted to be conveyed and transferred, said Welhausen is to advance two payrolls of $1,000 each, and advances $2,500 in payment of a cable which has not yet been paid for, but such advances to be the obligation of the newly formed company. The advance of $2,500 may be over a period of 4 months."

Appellant corporation was formed, and its stock issued, in accordance with the provisions of said contract. Faubion conveyed the leases to the corporation, Welhausen was made president, Faubion was elected secretary, and in addition to the $25,000 in stock issued to him, the corporation by and through its president executed to him three notes, dated June 15, 1923, each for $2,500, due respectively October 28, 1923, April 28, 1924, and October 28, 1924; and each reciting that it was "payable out of the net profits of the corporation." Further facts pertinent to the issues raised will be stated in discussing them.

The first contention made by the appellant is that said notes are not binding obligations of the corporation: (a) Because appellant had no corporate existence at the time of the execution of said contract; (b) because under said contract they were made the obligations of Welhausen and not of appellant; (c) because issued in violation of article 1348, R. S., in that appellant received no money, property, or labor in consideration therefor; and (d) because issued by one officer of the corporation to another in payment of a personal debt,

H. W. Wallace, of Cuero, and E. A. Wallace, of Cameron, for appellant.

Lawrence Bruhl and A. G. Mueller, both of Llano, and Walter Petsch and Alfred Petsch, both of Fredericksburg, for appellee.

and not resulting in any benefit to the corporation.

■ We do not sustain any of these contentions. The general proposition urged by appellant that promoters of a corporation are not its agents, and their contracts in its behalf, unless made so by charter or statute, are not binding upon the corporation when formed, is well settled. Weatherford, M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837; 14 C. J. 255, et seq. But a contract for the benefit of a corporation, adopted or ratified by it after its formation and such benfits accepted, is binding upon, and becomes the obligation of, the corporation. That was what occurred in this case. The contract between Welhausen and Faubion contemplated the formation of appellant corporation, and specified the obligations of each signer, together with certain obligations to be imposed upon the corporation. All of its terms were complied with. The property was conveyed to the corporation, the stock issued as provided, the notes executed as prescribed. No clearer evidence of adoption of the contract is needed than the undisputed fact that the corporation accepted the benefits of it and carried it out in detail. Nor is it material that the incorporators, including appellee, made affidavit in securing the charter that all the capital stock had been subscribed and fully paid. No fraud in procuring the charter is alleged, and no irregularity in granting it is charged, and had there been, the corporation is in no position to raise such questions here.

The next question presented is whether the enhanced values of the properties of the corporation constitute "net profits" of the corporation. As stated above, the notes sued upon were "payable out of the net profits of the corporation." It is not controverted that the corporation had never accumulated any surplus funds. The auditor's report in evidence showed that after deducting depreciation of machinery, amortization of leaseholds, and all operating expenses and interest charges from the time of incorporation to December 31, 1927, the books showed a net loss of approximately $44,000. There was evidence, however, that great improvements in the operation of the quarries had been made, the cost of production diminished, and the resulting value of such quarries greatly increased. The trial court found:

"Sixth: That the valuation of said property placed upon same and accepted by all parties to the suit at the time of the incorporation of the defendant, was the sum of $75,000.00, and that of said amount Six Thousand ($6,000.00) Dollars was the machinery and the balance was the value of the quarry leases and quarries to the defendant corporation conveyed by plaintiffs; that during the trial of the case, in open court, all parties to the suit agreed and accepted such values for the purposes of this trial; that since the date of the incorporation of the defendant, the value of the physical assets and properties of the defendant corporation, by virtue of improvements made thereon, of the development of the business of the corporation, of the discovery of great quantities of valuable stone and because the defendant corporation virtually owns and controls a monopoly of the most valuable kind of 'Polishing Granite' has increased and developed to such an extent that the present assets of the corporation greatly exceed the sum total of its capital stock and all of its liabilities, and that the corporation is in possession of and has acquired, a 'Net Profit' greatly in excess of the amount due upon the notes sued upon in this cause, and therefore said notes are each past due, and same are wholly unpaid."

His conclusions of law were:

"I conclude that by the term 'Net Profits' as set forth in the contract between the parties, and in the notes sued upon, is meant the clear gain of the corporation, ascertained by deducting from the present value of all its assets the capital stock of the corporation and all its liabilities.

"Third: "I further conclude that the excess or the sum or amount of the properties owned by the corporation by virtue of the present value of all of its assets, over and above the amount of the corporation's capital stock and its liabilities, constitutes 'Net Profits' and the same is liable for plaintiff's cause of action."

■ What constitutes the net profits of a corporation has been variously defined in numerous jurisdictions. See 14 C. J. 803; 45 C. J. 1386; 7 R. C. L. § 261, p. 284; 3 Words and Phrases, Second Series, 592; 3 Bouv. Law Dict. p. 2737; Cook on Corporations (6th Ed.) vol. 2, p. 1479; Thompson on Corporations (3d Ed.) vol. 7, p. 169 et seq. In the very nature of things the many and varied kinds of enterprizes which corporations are authorized by law to engage in make it impossible to measure "net profits" of all of them by any one rule. The diverse character of their operation, and the differing circumstances under which the questions are raised, give rise to a variety of definitions of this term. No good purpose would be served by a discussion here of the numerous definitions. It is, to a large degree, self-explanatory and implies, generally speaking, what remains in the conduct of a business after deducting from its total receipts all the expenses incurred in carrying on the business. Eyster v. Centennial Board, 94 U. S. 500, 24 L. Ed. 188; Mobile & O. Ry. Co. v. Tennessee, 153 U. S. 495, 14 S. Ct. 968, 38 L. Ed. 797. To such expenses may be charged taxes, upkeep, depreciation, and interest on the corporation's debts, but not interest on its capital. As a general rule any loss in the capital stock must be replaced before estimating earnings, but this rule does not apply to mining corporations. Cook on Corps. vol. 2, p. 1486. In

such case the product of the mine when used or sold cannot be replaced and it is not necessary to set aside funds to purchase another. Crocker v. Barteau, 212 Mo. 359, 110 S. W. 1062. That rule would, we think, apply to the granite quarry, in which appellant's capital was largely invested. The item of amortization ($12,880) included by the auditor in computing the appellant's book losses was therefore improper. Excluding that item, however, the books still showed a net loss in the conduct of the corporation's business.

There was sufficient testimony to sustain the court's finding of fact on increased values of the corporate properties. Faubion, who was secretary-treasurer of the corporation for some 2½ years after its formation, testified that during that time the biggest part of the money spent went into improvements of the quarry. The auditor's report showed, however, that all of it was charged as operating expenses in one form or another. The corporation was entitled to charge to operating expenses any legitimate or necessary expense incurred in conducting its business, but not to include therein betterments and improvements of its plant intended to increase the value of its capital. A corporation cannot defeat, or postpone indefinitely the payment of, an obligation contingent upon its earning net profits from its business, by putting back into improvements, which enhance the value of its properties, receipts or income which would otherwise become net earnings and thus avoid ever creating a surplus fund from which to pay such obligation.

The notes sued upon were not absolute liabilities of the corporation, due on the dates stated. The liability of the corporation was contingent upon its earning net profits with which to pay them. Under such circumstances it was incumbent upon plaintiff to plead and prove the occurrence or fulfillment of the condition or contingency upon which his right of recovery depended. Carlisle v. Hooks, 58 Tex. 420; Ferguson v. Mansfield, 114 Tex. 126, 263 S. W. 894. The appellee failed to show how much of the corporation's income or receipts, not properly chargeable as operating expenses, was put into improvements and betterments; or whether such sums, if not so reinvested, would have created a net profit. Nor has he shown just how much of the increased value of the assets of the corporation was due to such reinvestment. The court found that such enhancement was in part at least due to the discovery of valuable stone on the leases and the virtual monopoly thereof by the corporation. This element, perhaps the chief element, in such increased value did not arise from such expenditures. And the general rule seems to be that increase in the value of lands held by a corporation cannot be considered as profits, at least until such lands are sold and the profits actually realized. Thompson on Corps. (3d Ed.) vol. 7, § 5292, p. 171; Southern California Home Builders v. Young, 45 Cal. App. 679, 188 P. 586; Kingston v. Home Life Ins. Co., 11 Del. Ch. 258, 101 A. 898; 7 R. C. L. § 262, p. 284. Under such circumstances we think appellee failed to discharge the burden resting upon him to show that the corporation had earned net profits out of which only he was entitled to be paid; and that the court erred in finding and concluding that the enhanced value of its properties to such an extent as to create an excess of assets over liabilities of the corporation, taken alone, constituted net profits as a matter of law.

In view of a remand of the case, it is not necessary to discuss other questions raised, and they will not likely occur upon another trial. For the reasons stated the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.